**Lajuan Scott FREEMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00004–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 24, 2001.
Decided Nov. 30, 2001.

Clement Dunn, Attorney At Law, Longview, for appellant.

Andy Porter, Asst. Dist. Atty., Longview, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

WILLIAM J. CORNELIUS, Chief Justice.

LaJuan Scott Freeman appeals his conviction for possession of more than five pounds but less than fifty pounds of marihuana. After the trial court denied Freeman's motion to suppress, Freeman waived a jury trial and pleaded guilty. The trial court rejected the State's recommendation of five years' confinement and sentenced Freeman to eight years' confinement.

Freeman contends that the trial court erred in overruling his motion to suppress because the evidence found was the product of an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution and Article I, § 9 of the Texas Constitution. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. We find that the seizure was constitutional and that Freeman lacks standing to contest the search. We therefore affirm the judgment.

We use an abuse of discretion standard to review the trial court's ruling on a motion to suppress. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimonies. We view the evidence in the light most favorable to the trial court's ruling, *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999), and we afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We review *de novo* the court's application of the law of search and seizure to those facts. *State v. Ross*, 32 S.W.3d at 856. As no findings of fact or conclusions of law were filed, we will assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. If the trial court's decision is correct on any theory of law applicable to the case, we will affirm the decision. *Id.* at 855–56.

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), provides the framework for our inquiry into this traffic stop.[1] The question in *Terry* was whether it was always unreasonable for a peace officer to seize a person and subject him to a limited search unless there was probable cause for an arrest. *Id.*, 392 U.S. at 15, 88 S.Ct. 1868. The Court held that even though a "stop" and "frisk" was a search and seizure under the Fourth Amendment, *Id.* at 16–17, 88 S.Ct. 1868, such actions by peace officers could be reasonable under the Fourth Amendment. The Court adopted a two-part inquiry to determine the reasonableness of such an investigative detention: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the initial interference. *Id.* at 19–20, 88 S.ct. 1868.

Under the first part, "the police officer must be able to point to specif-

---

1. Because Freeman presents no argument on appeal that the United States Constitution and Texas Constitution should be interpreted as having different meanings, we decline to con-

sider that issue here. *See Johnson v. State*, 864 S.W.2d 708, 720 (Tex.App.—Dallas 1993), aff'd, 912 S.W.2d 227 (Tex.Crim.App.1995).

ic and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. 1868. In assessing whether the intrusion was reasonable, an objective standard is used. The question is whether the facts available to the officer at the moment of the seizure or search would cause a man of reasonable caution to believe that the action taken was appropriate. *Id.* at 21–22, 88 S.Ct. 1868. An investigative detention not based on reasonable suspicion is unreasonable and therefore in violation of the Fourth Amendment.

■■■■■ The second part of the *Terry* inquiry deals with the scope of the detention. The Supreme Court noted that an investigative detention, "like any other search, must be strictly circumscribed by the exigencies which justify its initiation." *Id.* at 25–26, 88 S.Ct. 1868. The scope of the search must be limited because a search reasonable at its inception may violate the Fourth Amendment because of its excessive intensity and scope. *Id.* at 18, 88 S.Ct. 1868. An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App.1997); *Lopez v. State,* 663 S.W.2d 587, 589 (Tex.App.—Houston [1st Dist.] 1983, no pet.). A detention that is not temporary and reasonably related·in scope to the circumstances that justified the interference is unreasonable and violates the Fourth Amendment. *Davis v. State,* 947 S.W.2d at 243.

■■■ Freeman was traveling on the interstate highway in a rental vehicle when he was stopped by a police officer for following another vehicle too closely. On appeal Freeman does not contest the validity of the initial stop, but only the detention that followed. Essentially he argues that the officer's actions failed the second

part of the *Terry* inquiry because the scope of the detention went beyond the purpose of the stop and was therefore unreasonable and unconstitutional. After being stopped, the officer approached the driver's-side window and asked to see Freeman's driver's license and the car rental agreement. After Freeman produced his Alabama driver's license and the rental agreement, he stepped out of the vehicle at the officer's request and went to the rear. There the officer questioned Freeman for a few minutes about his travel plans, who rented the vehicle, and the identity of the passenger in the car. With Freeman remaining at the rear of the vehicle, the officer then went to the passenger's-side window and questioned the female passenger. He asked her the same type of questions for two or three minutes. The officer said it was while questioning the passenger that he detected a smell emanating from the vehicle that indicated someone had been smoking marihuana.

The officer stopped Freeman for the purpose of investigating the traffic violation. Once the officer concluded the investigation of the traffic violation, he could no longer lawfully detain or question Freeman unless he had reasonable suspicion to believe another offense was being committed. We must therefore determine the time the officer concluded the investigation of the traffic violation and when the officer first had reasonable suspicion to believe another offense was being committed.

Freeman argues that the officer concluded the investigation of the traffic violation before questioning the passenger and smelling the marihuana, so the continued detention of Freeman for the purpose of questioning the passenger constituted an unreasonably prolonged detention. We disagree. On this point, we find helpful the analysis by Professor W. LaFave, cited with approval by the Supreme Court in

*Michigan v. Summers,* 452 U.S. 692, 701 n. 12, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981):

> It is clear that there are several investigative techniques which may be utilized effectively in the course of a *Terry*-type stop. The most common is interrogation, which may include both a request for identification and inquiry concerning the suspicious conduct of the person detained. Sometimes the officer will communicate with others, either police or private citizens, in an effort to verify the explanation tendered or to confirm the identification or determine whether a person of that identity is otherwise wanted.... There is no reason to conclude that any of the investigative methods of the type just listed are inherently objectionable....

3 W. LaFave, Search And Seizure § 9.2, pp. 36–37 (1978) (footnotes omitted). During the investigation, the officer had the right to ask to see the driver's license and insurance papers, information on the ownership of the vehicle, the driver's destination, and the purpose of the trip. *United States v. Shabazz,* 993 F.2d 431, 437 (5th Cir.1993); *Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.—Fort Worth 1998, pet. ref'd). It was also reasonable for the officer to approach the passenger and ask her similar questions. *See Duff v. State,* 546 S.W.2d 283, 286 (Tex.Crim.App.1977). That is what happened here.

■ The officer detected the smell of marihuana while talking to the passenger. He thus detected the smell of marihuana before he concluded his valid investigation of the traffic violation. If, during the course of a valid investigative detention, the officer develops a reasonable suspicion that the detainee was engaged in or soon would engage in criminal activity, a continued detention is justified. *See Davis v. State,* 947 S.W.2d at 245. During the course of this detention, both Freeman and his passenger gave numerous incongruent answers to basic questions. The officer testified that Freeman told him that he had flown to Dallas and was then driving back to Birmingham, Alabama; that a relative had rented the vehicle; that his passenger was a cousin who was traveling with him to visit Birmingham because she had never been there; that she was only going to stay a few hours and then drive the rental vehicle back to Dallas; and that he had been arrested only for traffic violations, which a later check proved untrue. The officer testified that the passenger gave one name, which she had difficulty spelling, and her identification showed another name; that she gave one birth date and her identification showed another; and that she would be staying in Birmingham for two or three weeks. The officer also testified that his primary duty was working drug interdiction and that rental vehicles eastbound out of Dallas with out-of-state license plates such as this one were the kind for which he looked. We find that these facts were sufficient to give rise to a reasonable suspicion that Freeman was engaged in criminal activity. Thus, the continued detention was justified.

■ Although Freeman does not challenge the validity of the initial stop, he refers in his brief to the fact that the officer testified that the apparent traffic stop had nothing to do with his stopping the car since he was stopping cars that had indicators of drug trafficking. This, however, does not taint the stop or the detention. The subjective intent of the officer is not determinative. As said by the United States Supreme Court, we must allow "subjective intentions [to] play no role in ... [our] analysis." *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Walter v. State,* 28 S.W.3d 538, 543 (Tex.Crim.App.2000).

■ Freeman also contends the search of the vehicle was improper. Freeman has standing to challenge the constitutionality of the seizure or detention of his own person, but he lacks standing to challenge the search of the rental vehicle. On appeal, Freeman presents no argument on the issue of standing. Analysis of standing problems requires careful identification of the distinguishable "searches" and "seizures" involved in a particular situation. 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE; CRIMINAL PRACTICE AND PROCEDURE § 4.52, at 203 (2d ed.2001). A defendant may have standing to challenge the determinative reasonableness of the seizures involved in his own detention and yet lack standing to challenge a search of the vehicle. *Id.; see Trinh v. State,* 974 S.W.2d 872, 874 (Tex. App.—Houston [14th Dist.] 1998, no pet.). The search of the vehicle, as well as evidence obtained in that search, may be the fruit of the earlier seizures that the accused has standing to challenge. Dix, *supra; see Trinh v. State,* 974 S.W.2d at 874–75. That is what happened in our case.

■ The purpose of both the Fourth Amendment and Article I, § 9 is to safeguard a person's legitimate expectation of privacy from unreasonable governmental intrusions. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). An accused has standing under both of these constitutional provisions to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded. *Id.* (citing *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). The accused, because he has greater access to the relevant evidence, has the burden of proving facts establishing a legitimate expectation of privacy. *Id.* To carry this burden, the accused must normally prove: (a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Id.* (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)).

■ A defendant has standing to challenge the search of an automobile he does not own if he has permission from the owner to drive the vehicle, or if he has permission from some other person authorized to give such permission, or if he otherwise has a legal right to use and control the vehicle. *Nite v. State,* 882 S.W.2d 587, 590–91 (Tex.App.—Houston [1st Dist.] 1994, no pet.) (defendant had standing to challenge search of car registered to his wife in part because of community property laws); *State v. Bassano,* 827 S.W.2d 557, 560 (Tex.App.—Corpus Christi 1992, pet. ref'd); *Stine v. State,* 787 S.W.2d 82, 85 (Tex.App.—Waco 1990, pet. ref'd) (defendant who had authority to test drive vehicles left for repairs at car repair shop had standing to challenge search of car which he used to commit murder). A person driving a rental car does not have standing to challenge a search of the vehicle if his driving of the car is prohibited by the vehicle rental agreement, even if he has the permission of the person who rented the vehicle. *See United States v. Boruff,* 909 F.2d 111, 117 (5th Cir.1990); *Rovnak v. State,* 990 S.W.2d 863, 871 (Tex. App.-Texarkana 1999, pet. ref'd) (following *Boruff*). *Contra, United States v. Kye Soo Lee,* 898 F.2d 1034, 1038 (5th Cir.1990) (driver of rental truck, who had permission from the lessee but not the lessor, had standing to challenge the search). The evidence shows that Freeman was driving a rental vehicle, he was not a driver registered on the rental agreement, and there

was no one in the vehicle who was a registered driver. When asked by the traffic officer who the registered drivers were, Freeman stated they were relatives. The fact that relatives may have rented the vehicle is not in itself evidence that Freeman had legal authority to drive the vehicle. *See Flores v. State*, 871 S.W.2d 714, 719–20 (Tex.Crim.App.1994) (defendant driving vehicle registered in mother's name lacked standing to contest vehicle search). No evidence was introduced to show that Freeman had any interest in or right to use the vehicle. There is not even a bare assertion that he had such a right. Thus, Freeman failed to demonstrate that he had a legitimate expectation of privacy in the car. Although Freeman had standing to challenge the detention, which we have upheld as constitutional, he lacked standing to challenge the search of the rental vehicle.

For the reasons stated, we affirm the judgment.