**Jerrold RATHBUN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–01–00148–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 14, 2002.
Decided Nov. 20, 2002.

Clement Dunn, Attorney At Law, Longview, for appellant.

Andrea Thompson, Asst. Dist. Atty., William M. Jennings, Gregg County Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Jerrold Rathbun pled guilty to injury to a child—criminal episode and was sentenced to fifteen years in a state correctional facility with no fine assessed. In his sole point of error, Rathbun contends the trial court erred in overruling his motion to suppress his written statement because he was not adequately warned of his rights under TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.2003).

### Fact Summary

On September 12, 2000, Child Protective Services (CPS) removed Jerrold Rathbun's older daughter from her home because of suspected child abuse. Based on interviews with that daughter, CPS returned to the Rathbun residence on September 15, 2000, to remove Rathbun's younger child. During the removal by CPS, Longview police officers Donald Jeter and Riley Taylor arrived at the Rathbun home to investigate the validity of the allegations and conduct a voluntary search of the residence. Taylor interviewed Jerrold Rathbun on the front porch, while Jeter interviewed Rathbun's wife in the living room. At that time, Taylor gave Rathbun the

first of two *Miranda*[1] warnings and obtained Rathbun's written consent to search the home. While Jeter conducted the search, Taylor asked Rathbun to come to the police station and give a written statement, but told Rathbun he was not under arrest. Rathbun drove himself, unaccompanied, to the police station. According to Rathbun, he needed to drive his vehicle so he would have a ride home. At the station house, Taylor again advised Rathbun of his *Miranda* rights and obtained a signed waiver. Shortly thereafter, Officer Terry Davis joined the interview. Davis was not present during either *Miranda* warning.

The interview lasted approximately two hours and culminated in Rathbun accompanying Davis to his desk for Davis to type a written statement summarizing the interview. After Rathbun signed the statement, he returned home. Approximately three weeks later, Rathbun was charged and arrested.

## Discussion

**Standard of Review**

■ The standard of review for the trial court's ruling on a motion to suppress is abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999); *Freeman v. State*, 62 S.W.3d 883, 886 (Tex. App.-Texarkana 2001, pet. ref'd). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. The evidence should be viewed in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim. App.1999); *Freeman*, 62 S.W.3d at 886. We should afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact-findings are based on an evaluation of the witnesses' credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Freeman*, 62 S.W.3d at 886.

**TEX.CODE CRIM. PROC. ANN. art. 38.22**

■ Voluntary, noncustodial statements are exempt from the requirements of *Miranda* and Article 38.22 and are thus admissible at trial. *Holland v. State*, 770 S.W.2d 56, 58 (Tex.App.-Austin 1989), *aff'd*, 802 S.W.2d 696 (Tex.Crim.App.1991). Rathbun concedes, as he must, that Article 38.22 applies only to persons in custody. The first question, which is dispositive, is whether Rathbun's written statement was the product of a custodial interrogation. If we find no custodial interrogation occurred, then Rathbun's written statement is not subject to *Miranda* or Article 38.22 and, therefore, the trial court did not err in admitting his statement into evidence.

In *Miranda*, the United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ A person is in "custody" only if, under the circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244 (Tex.Crim.App.1996) (citing *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). The "reasonable person" standard presupposes an innocent person. *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Moreover, the subjective intent of law enforcement officials to arrest is irrelevant unless

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that intent is somehow communicated or otherwise manifested to the suspect. *Stansbury,* 511 U.S. at 319, 114 S.Ct. 1526. Custody determinations must be made on an *ad hoc* basis, after considering all of the (objective) circumstances. *Shiflet v. State,* 732 S.W.2d 622, 629 (Tex.Crim.App.1985).

The Texas Court of Criminal Appeals in *Dowthitt* outlined some general situations that may constitute custody: 1) when the suspect is physically deprived of his or her freedom of action in any significant way, 2) when a law enforcement officer tells the suspect he or she cannot leave, 3) when law enforcement officers create a situation that would lead a reasonable person to believe his or her freedom of movement has been significantly restricted, and 4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he or she is free to leave. *Dowthitt,* 931 S.W.2d at 255 (citing *Shiflet,* 732 S.W.2d at 629).

The restriction on freedom of movement in situations one through three must amount to the degree associated with an arrest, as opposed to an investigative detention. *Id.* In situation four, an officer must manifest to the suspect knowledge of probable cause. *Id.* Such manifestation results when information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. *Id.* Situation four, however, does not automatically establish custody. Rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe he or she is under restraint to the degree associated with an arrest. *Id.*

In short, we must look at the totality of the circumstances and determine whether Rathbun's freedom of movement was restrained to a degree associated with a formal arrest.

■■■■ Rathbun contends any reasonable person would have believed he was not free to leave. The facts, however, do not support his conclusion. While it is true much of the interview took place at the police station, station house questioning does not, in and of itself, constitute custody. *California v. Beheler,* 463 U.S. 1121, 1124–25, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *see Russell v. State,* 717 S.W.2d 7, 11 (Tex.Crim.App.1986). We must, therefore, look closely at the other facts and circumstances relating to Rathbun's detention.

During the early stages of the interview, officers made their intentions clear to Rathbun. They were there to investigate and search for evidence, not to arrest him. When Rathbun and the officers went to the police station to continue the interview, Rathbun drove his own vehicle. According to Rathbun, he did this so he would have a ride home. More telling is Rathbun's own testimony, wherein he acknowledged he had the right to terminate the interview with the officers at any time. Further, the statement Rathbun signed contained the words: "Longview Police Department, Voluntary Statement, Not under Arrest," which he initialed. No element of coercion or control appears in the record. Also, there is no evidence officers restricted Rathbun's movements at the police station or ignored any of his requests. Although Rathbun testified he felt he could not leave during the interview, he never asked to leave and there is no evidence that officers would have denied any such request. Finally, officers told Rathbun he was not under arrest on at least two occasions during the interview. A reasonable person in Rathbun's position would not have believed he was restrained to the degree associated with a formal arrest.

In his brief, Rathbun also raises Officer Davis' testimony regarding the station

house interview wherein Davis stated: "I also knew it was a custodial interrogation." Rathbun contends Davis' conduct was entirely consistent with this statement. Nothing in the record, however, indicates Davis made this interpretation of the interview known to Rathbun. On the contrary, Davis drafted Rathbun's written statement, which indicated on its face that it was voluntary and that Rathbun was not under arrest. The subjective intent of law enforcement officials is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Dowthitt,* 931 S.W.2d at 255 (citing *Stansbury,* 511 U.S. at 318, 114 S.Ct. 1526).

The trier of fact is the sole judge of the credibility of the witnesses. *Ballard,* 987 S.W.2d at 891. Here, the trial court had sufficient evidence before it to conclude Rathbun's written statement was not a product of a custodial interrogation. The trial court, therefore, did not abuse its discretion in overruling Rathbun's motion to suppress. We overrule Rathbun's sole point of error.

We affirm the judgment.