In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00072-CR


______________________________




ALFONZA LEWIS BROWN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Marion County, Texas


Trial Court No. F13,502




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Alfonza Lewis Brown appeals the adjudication of his guilt for unauthorized use of a vehicle. 
See Tex. Penal Code Ann. § 31.07 (Vernon 2003). Pursuant to a plea agreement, Brown was
placed on deferred adjudication community supervision November 22, 2004. The State filed a
motion to proceed with the adjudication, and after a hearing on that motion, the trial court on
November 9, 2006, adjudicated Brown guilty and imposed a sentence of two years' confinement in
a state-jail facility.

 On appeal, Brown first contends the trial court abused its discretion in assessing a sentence
disproportionate to the offense and the circumstances, citing Atchison v. State, 124 S.W.3d 755 (Tex.
App.--Austin 2003, pet. ref'd), in addition to the Texas Constitution, the Texas Code of Criminal
Procedure, and the Texas Penal Code. (1)

 The only method available to attack the sentence assessed by a fact-finder is to argue that it
exercised its discretion in such an unreasoning or unfair fashion to the effect that the punishment is
grossly disproportionate when related to the offense. See Bradfield v. State, 42 S.W.3d 350, 352
(Tex. App.--Eastland 2001, pet. ref'd); Kanouse v. State, 958 S.W.2d 509, 510 (Tex.
App.--Beaumont 1998, no pet.). (2) As the punishment assessed was within the applicable statutory
range, the issue as it may be presented is whether the punishment assessed was grossly
disproportionate and thus unconstitutional.

 To preserve a disproportionality claim for appellate review, Brown must have presented to
the trial court a timely request, objection, or motion that stated the specific grounds for the desired
ruling, if not apparent from the context. See Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d
249, 265 (Tex. Crim. App. 1998); Nicholas v. State, 56 S.W.3d 760, 768 (Tex. App.--Houston
[14th Dist.] 2001, pet. ref'd) (failure to complain to trial court about consecutive sentencing waived
claim of error). No objection or motion in this case, either during the trial proceeding or in a motion
for new trial, sets out any constitutional complaint. Thus, the claimed error has not been preserved
for our review. 

 We further note that, even if the contention had been preserved for review, there is no
evidence in the record comparing the sentences imposed on persons in Texas with sentences imposed
against defendants in other jurisdictions who committed a similar offense. Thus, the issue could not
prevail in any event. See Mullins v. State, 208 S.W.3d 469, 470 (Tex. App.--Texarkana 2006, no
pet.).

 In his second point of error, Brown contends that the judgment entered in the case does not
correctly recite the plea entered by him to the State's motion to adjudicate and requests that the
judgment be reformed. The State concedes in its brief that the judgment should be reformed to
reflect that Brown pleaded "not true" to all six of the allegations in the State's motion to adjudicate. 
Therefore, we reform the judgment to indicate pleas of "not true" to all allegations contained in the
motion to adjudicate. See Tex. R. App. P. 43.2; French v. State, 830 S.W.2d 607 (Tex. Crim. App.
1992). 

 As reformed, we affirm the trial court's judgment.



 Bailey C. Moseley

 Justice


Date Submitted: July 16, 2007

Date Decided: July 17, 2007


Do Not Publish

1. Article 42.12, Section 5(b) of the Texas Code of Criminal Procedure prohibits an appeal of
the trial court's decision to adjudicate guilt. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon
2006); Hargesheimer v. State, 182 S.W.3d 906, 912 (Tex. Crim. App. 2006). However, a defendant
may appeal from other matters that occurred at the punishment proceeding other than the decision
to adjudicate. The asserted error must directly and distinctly concern the second phase; the claim
must, on its face, relate to the sentence imposed, not to the decision to adjudicate. Hogans v. State,
176 S.W.3d 829, 834 (Tex. Crim. App. 2005).

2. See Hyde v. State, 723 S.W.2d 754, 755 (Tex. App.--Texarkana 1986, no pet.), holding that
we had no authority to review the reasonableness of punishments assessed by the juries and the trial
courts of this State if within the range of punishment prescribed by statute for the offense, except
under a disproportionality analysis.


driving while intoxicated. Id. The Texas Transportation
Code requires a driver on a roadway who is moving slower than the normal speed of other vehicles
to drive in the right-hand lane, unless the driver is passing or preparing for a left-hand turn. Tex.
Transp. Code Ann. § 545.051(b) (Vernon 1999); Fisher, 56 S.W.3d at 163. Fisher testified he had
moved into the right-hand lane by the time the officer actually stopped his vehicle. Fisher, 56
S.W.3d at 163. However, the court reasoned that, while Fisher may have presented conflicting
evidence regarding the stop, there was sufficient evidence for the court to determine the stop was
based on reasonable suspicion. Id. 

 In the present case, the State contends Green was in violation of the following statutes: 

 If, on a highway having more than one lane with vehicles traveling in the same
direction, the Texas Department of Transportation or a local authority places a sign
that directs slower traffic to travel in a lane other than the farthest left lane, the sign
must read "left lane for passing only." 


Tex. Transp. Code Ann. § 544.011 (Vernon Supp. 2002). 


 

 The operator of a vehicle or streetcar shall comply with an appliable official
traffic control device placed as provided by this subtitle . . . . A provision of
this subtitle requiring an official traffic-control device may not be enforced
against an alleged violator if at the time and place of the alleged violation the
device is not in proper position and sufficiently legible to an ordinary
observant person. A provision of this subtitle that does not require an official
traffic-control device is effective regardless of whether a device is in place.


Tex. Transp. Code Ann. § 544.004 (Vernon 1999).


Green contends that, at the time of the stop, the "Left Lane for Passing Only" sign was not
controlling and the officers were unreasonable in their belief that she was in violation. Specifically,
Green argues that the "Slower Traffic Keep Right" sign, located between the "Left Lane for Passing
Only" sign and the stop, was controlling and that her conduct was in conformity therewith. 
However, the officers testified that, in their opinion, a motorist who passes a "Slower Traffic Keep
Right" sign after he or she had passed a "Left Lane for Passing Only" sign would be in violation of
the Transportation Code if he or she continued to travel in the left-hand lane. We are thus faced with
the question, in light of the facts available to the officers at the time of the stop, taken together with
rational inferences from those facts, whether a reasonable officer would conclude Green was in
violation of the aforementioned statutes. Whren, 517 U.S. at 809; Woods v. State, 970 S.W.2d 770,
773 (Tex. App.-Austin 1998, pet. ref'd).

 First, according to the relevant statutory provisions, a motorist, on seeing a traffic control
sign directing vehicles to remain in the right-hand lane unless passing another motorist, would be
in violation for continuing to travel in the left-hand lane if no other vehicles were in the vicinity.
Tex. Transp. Code Ann. §§ 544.004, 544.011; Baker v. State, 50 S.W.3d 143, 145 (Tex.
App.-Eastland 2001, pet. ref'd) (holding person of ordinary intelligence would know from reading
sign, left-hand lane was for passing only and would know when they must move from left-hand
lane). The officers testified Green was traveling in the left-hand lane in violation of the above
statutes. On the other hand, Green argues that, on seeing the "Slower Traffic Keep Right" sign, she
was no longer required to comply with the previous sign and it was unreasonable of the officers to
effect the stop based on her conduct. Specifically, Green contends Section 545.051(b) of the Texas
Transportation Code sets forth the default rule, which directs slower motorists to travel in the right-hand lane in deference to faster moving traffic. Tex. Transp. Code Ann. § 545.051(b). Further,
Green contends the "Slower Traffic Keep Right" sign was intended to supersede the "Left Lane for
Passing Only" sign and implement the rule set forth in Section 545.051(b). However, Green has not
cited any authority in support of her contention, and this Court is not persuaded that is the default
rule or that the "Slower Traffic Keep Right" sign was intended to convey that message to motorists. 
In fact, Section 545.051(a) of the Transportation Code directs motorists to travel in the right-hand
lane at all times unless certain exceptions apply, none of which are applicable in this case. Tex.
Transp. Code Ann. § 545.051(a) (Vernon 1999). Therefore, Green has at best raised some
ambiguity as to which provision would prevail in that situation. Again, the applicable inquiry is not
whether a law was actually violated, but whether the officer had reasonable suspicion of a violation.
Valencia, 820 S.W.2d at 400. Like Fisher, Green may have presented conflicting evidence regarding
the stop, but there is sufficient evidence for this Court to determine the stop was based on reasonable
suspicion. In her second point of error, Green contends the duration and scope of the stop
exceeded its constitutional limits. Again, the ruling of a trial court on a motion to suppress evidence
will not be set aside absent a showing of abuse of discretion. Maddox, 682 S.W.2d at 564. Viewing
the evidence in the light most favorable to the trial court's ruling, we consider only whether the trial
court improperly applied the law to the facts. Romero, 800 S.W.2d at 543. If the trial court's
findings are supported by the record, this Court is not at liberty to disturb them. Etheridge, 903
S.W.2d at 1.

 To determine the reasonableness of an investigative detention under the Fourth Amendment,
we apply the guidelines set out by the United States Supreme Court in Terry v. Ohio: (1) whether
the officer's action was justified at its inception; and (2) whether it was reasonably related in scope
to the circumstances that justified the interference initially. Davis v. State, 947 S.W.2d 240, 242
(Tex. Crim. App. 1997) (citing Terry v. Ohio, 392 U.S. 1, 19-20 (1968)). A search that is reasonable
at its inception may violate the Fourth Amendment by virtue of its excessive intensity and scope.
Davis, 947 S.W.2d at 243. Under the second guideline, the detention must be no longer than is
necessary to satisfy the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500 (1983). However,
when officers are running a computer check, they are entitled to question the offender about things
unrelated to the initial stop because it does not extend the length of the stop. On the other hand, if
during the course of the initial stop, the officer develops a reasonable suspicion the offender is
involved in or is about to be involved in criminal activity, an extended detention is permissible. 
Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983). The officer is entitled to rely on all
of the information obtained during the course of the stop to formulate articulable facts that would
justify a continued detention. Id. 

 For example, in Freeman, this Court held that the officer was justified in detaining the
offender longer than needed to effectuate the purpose of the stop. Freeman v. State, 62 S.W.3d 883,
888 (Tex. App.-Texarkana 2001, pet. ref'd). Specifically, Freeman was stopped for following
another vehicle too closely. Id. at 887. During the stop, the officer approached the driver's side
window and asked Freeman to exit the vehicle. Id. The officer questioned Freeman about his
destination, who rented the car, and the identity of the passenger. Id. The officer then approached
the passenger's side window and asked the passenger the same questions. Id. The passenger's
answers were inconsistent with Freeman's, and the officer testified he smelled marihuana inside the
vehicle. Id. Because the officer elicited the inconsistent answers and smelled the marihuana before
the initial stop had concluded, this Court held that the officer had developed articulable facts
necessary to continue the detention. Id. at 888.

 Similarly, in the present case, Green contends the initial investigation had concluded before
the arrival of the K-9 unit and the officers did not have articulable facts on which to justify her
continued detention. However, the officers testified that, on approaching the vehicle, they smelled
a strong odor of alcohol and determined it may have been used as a masking agent. Further, the
officers testified Green appeared nervous and her hands were visibly shaking. While McBride was
checking Green's driver's license and criminal record, Green consented to a search of her purse and
Haley found marihuana residue. In Freeman, this Court held that, if the officer develops a
reasonable suspicion before the initial investigation is completed, a continued detention is justified.
Id. 887. In the present case, the officers developed articulable facts before the initial stop had
concluded (i.e. before McBride completed checking Green's driver's license and criminal history
records); therefore, the officers had reasonable suspicion necessary to continue the detention.

 In her third point of error, Green contends her consent to search the trunk was not given
voluntarily. When the State relies on a consent to search, the burden of proof is on the prosecution
to show by clear and convincing evidence the consent was freely and voluntarily given. Paulus v.
State, 633 S.W.2d 827, 850 (Tex. Crim. App. [Panel Op.] 1981). The prosecution must show the
consent given was positive and unequivocal, and there must not be a showing of duress or coercion,
actual or implied. Rovnak v. State, 990 S.W.2d 863, 872 (Tex. App.-Texarkana 1999, pet. ref'd). 
If the prosecution does not show more than mere acquiescence to a show of lawful authority, the
burden has not been discharged. Id. Further, a reviewing court must look at the totality of the
circumstances to determine if the consent was voluntary. Id. 

 During the course of the initial traffic stop, McBride asked Green if she had any drugs in the
vehicle and if he could conduct a search. Green answered "no" to both questions. However, after
obtaining reasonable suspicion that another offense may have been committed, McBride requested
that a K-9 unit be dispatched to the scene. On arrival of the K-9 unit, Green told the officers that
"what they were looking for was in the trunk." McBride expressly asked Green for her consent to
inspect the trunk, and she willingly gave her consent and the keys to the officer. After opening the
trunk, the officers found the marihuana in question. 

 There was no evidence presented that Green was placed under duress in order to obtain her
consent. Green was aware of her right to refuse consent, as evidenced by her earlier refusal, and the
officers did not threaten to obtain a search warrant or coerce Green in any fashion. Further, the
officers would have likely had probable cause to conduct a search without Green's consent given the
presence of the K-9 unit. (1) Accordingly, based on the totality of the circumstances, Green's consent
was freely and voluntarily given. Based on the foregoing, Green's motion to suppress was properly denied. We affirm the trial
court's judgment.


 Josh R. Morriss, III 

 Chief Justice


Date Submitted: October 15, 2002

Date Decided: November 1, 2002


Publish
1. Once the dog, which was trained to recognize and identify the location of drugs, alerted to
the railing of the pickup truck, the officers had probable cause to search the vehicle. See Ortiz v.
State, 930 S.W.2d 849, 856 (Tex. App.-Tyler 1996, no pet.)
.