**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00299-CR**
_____

**MARK SHANE CONNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 1A District Court**
**Tyler County, Texas**
**Trial Cause No. 13,648**

**MEMORANDUM OPINION**

A jury found Mark Shane Conner guilty of possession of a controlled substance with intent to deliver in an amount greater than four grams but less than 200 grams, a first-degree felony. *See* Tex. Health & Safety Code Ann. § 481.112(d). Conner pleaded "true" to enhancements, and the jury assessed punishment at seventy-five years of confinement. In one issue, Conner complains that the trial court erred by denying his pretrial motions to suppress. For the following reasons, we will affirm the trial court's judgment.

1

# BACKGROUND[1]

In December 2019, Hardin County Sheriff Deputies Lieutenant Mark Vincent and Sergeant Jesse Orr were investigating the theft of a vehicle. They received information the vehicle might be in Conner's possession on property covering several acres in Tyler County owned by Paul Mark Freeman. When Vincent and Orr arrived, they encountered Conner on one side of a driveway leading to the property, leaning inside a white Chevrolet pickup truck.[2] When Conner observed the officers, Vincent explained that Conner began acting nervous and making furtive movements with his hands as he leaned inside the truck.

While Orr talked with Conner about why the officers were there, Vincent walked around to visually check that no weapons were in the vicinity, and in the process, observed through the truck window what appeared to be methamphetamine on the front seat. Vincent and Orr, being Hardin County Sheriff Deputies, did not immediately arrest Conner, but called Tyler County Deputy Simon Prince, who arrived at the scene shortly after. After observing the narcotics through the truck window in plain view and doing an investigation on-site, Prince arrested Conner for possession of narcotics.

---

[1]We limit our background discussion to those matters relevant to the Motion to Suppress.

[2]This truck was not the stolen vehicle the officers were investigating.

2

Conner was charged with possession of methamphetamine with intent to distribute in an amount greater than four grams but less than 200 grams. Conner filed two pretrial motions to suppress. The first pretrial Motion to Suppress asserted that both the search and arrest violated various constitutional and statutory provisions and were unlawful. Conner sought to suppress any evidence relating to the arrest, officers' testimony in connection with Conner's detention and arrest, and "tangible evidence seized." Conner filed a second Motion to Suppress before trial, which also addressed Conner's statements and argued the arrest was unlawful. The trial court denied both motions to suppress after holding separate pretrial hearings. Conner complains in one issue that the trial court erred in denying his motions to suppress. In support of this issue, he argues that the Hardin County and Tyler County officers did not have a legal right to be on the premises, therefore the evidence and statements obtained by Hardin County and Tyler County officers should be suppressed.

FIRST SUPPRESSION HEARING

In the first suppression hearing, Vincent testified they were investigating stolen vehicles and received information that Conner may have stored a stolen vehicle at the property owned by Freeman. According to Vincent, Freeman had always been cooperative and friendly on the occasions when he visited with Freeman on his property. When they arrived, Vincent and Orr drove through an open gate, drove down the long driveway, and saw Conner while he was standing near the

3

pickup truck when he "began to shuffle around[.]" Vincent further testified that Conner "appeared to be very nervous, [when] some furtive movement inside the vehicle [ ]led me to believe that he could be concealing drugs, weapons, or anything of that nature inside the vehicle."

Vincent testified he walked around to speak to another man who was working underneath a different vehicle on Freeman's property and to make sure there were not any weapons nearby. As Vincent visually checked the area for weapons "for safety reasons," Vincent looked through the window of the pickup truck he had seen Conner reaching inside. According to Vincent, he saw "clear Ziploc baggies" in the front seat of the truck that were "highly visible" and appeared to contain methamphetamine. Vincent testified he asked Conner how much methamphetamine was in the truck. Conner responded, "A lot."

Vincent explained they did not place Conner under arrest or seize the methamphetamine, but instead called Tyler County Deputy Prince. When Prince arrived, he also observed what appeared to be methamphetamine in plain view. Prince provided similar testimony at the suppression hearing that when Prince arrived at the scene, he also observed the methamphetamine in "plain view through a clear window" and seized the drugs, along with scales and small plastic baggies.

Vincent testified that Conner did not own the truck where he saw Conner and the drugs. The State also introduced photographs of the truck's license plate and

4

paperwork, which shows that Conner is not the registered owner of the truck. Conner did not call any witnesses or introduce any exhibits at the hearing to establish he owned the truck, borrowed it, or otherwise had permission from an authorized individual to use it.

Conner did not offer any evidence at the hearing to establish he owned the land in question. The evidence also showed multiple RVs on the property, and the officers testified Conner gave conflicting information about living in an RV on the premises some distance from where the truck was located. Body camera video footage the trial court admitted during the hearing shows Freeman told the officers that Conner lived in one of the RVs.[3] The same footage shows that while Freeman knew Conner was on his property, Freeman expressed he was surprised about the methamphetamine. Officers also testified that they had received information Conner had been storing stolen property on Freeman's property.

## SECOND SUPPRESSION HEARING

The second Motion to Suppress and hearing focused on Conner's statements to the officers. During the pretrial hearing on Conner's second Motion to Suppress, he argued that officers failed to Mirandize him, and therefore, his statements should have been suppressed. The State responded by reading from the first suppression

---

[3]While there is some evidence that Conner may have lived in an RV, which was later searched, no evidence obtained from the RV was offered or admitted. Rather, the issue centers on the officers' ability to be on the land Freeman owned.

hearing transcript regarding Vincent's testimony that Conner was not under arrest and free to leave. The trial court again denied the Motion to Suppress. Conner then requested a running objection based on the denials of both motions to suppress.

STANDARD OF REVIEW

We review rulings on motions to suppress under a bifurcated standard. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018); *Dugar v. State*, 629 S.W.3d 494, 497 (Tex. App.—Beaumont 2021, pet. ref'd). In a motion to suppress hearing, "the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony." *Lerma*, 543 S.W.3d at 190. The parties did not request oral or written findings to support the trial court's ruling denying the motion to suppress. Where, as here, a trial court does not make explicit findings of fact, we "infer[] the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (citation omitted); *Dugar*, 629 S.W.3d at 497. We afford almost total deference to the trial court's ruling on the motion when that ruling hinged on its findings of historical facts, especially when they turn on the trial court's decisions concerning credibility and demeanor. *Garcia-Cantu*, 241 S.W.3d at 241; *Dugar*, 629 S.W.3d at 497; *see also Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). "We apply this highly deferential standard 'regardless of whether

6

the trial court has granted or denied a motion to suppress[.]'" *Dugar*, 629 S.W.3d at 497 (quoting *Garcia-Cantu*, 241 S.W.3d at 241). In doing so, we give the trial court's ruling the strongest legitimate view of the evidence, and absent explicit findings, we review the record to determine if the evidence supports the trial court's ruling denying the motion. *See id.* We review the trial court's application of the law to facts de novo. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We likewise review the issue of a defendant's standing to assert a substantive violation de novo. *See Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004); *see also State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). We will sustain the trial court's ruling if it is correct on any applicable theory of law. *Valtierra*, 310 S.W.3d at 447–48.

## ANALYSIS

On appeal, Conner argues that the officers had no right to be on the property in the first place, and therefore, any evidence they saw in plain view in the truck should be suppressed along with Conner's statements. The State counters that Conner did not have standing to challenge the search or seizure, as he did not meet his burden to show he had a legitimate expectation of privacy in the place they searched. Viewing the record under the highly deferential standard set forth above, we agree with the State. *See Dugar*, 629 S.W.3d at 497.

Article I, Section 9, of the Texas Constitution and the Fourth Amendment of the U.S. Constitution protect individuals from unreasonable searches and seizures. *Betts*, 397 S.W.3d at 203 (citation omitted); *see also* U.S. CONST. amend. IV; Tex. Const. art. I, § 9. Since the rights secured by these constitutional provisions are personal, "an accused has standing to challenge the admission of evidence obtained by an 'unlawful' search or seizure only if he had a legitimate expectation of privacy in the place invaded." *Betts*, 397 S.W.3d at 203 (citing *Rakas v. Illinois*, 439 U.S. 128, 139, 143 (1978)) (other citation omitted).

A defendant challenging the search has the burden to prove facts demonstrating a legitimate expectation of privacy. *See id.*; *Kothe*, 152 S.W.3d at 59. He must show he had a subjective expectation of privacy in the place invaded and that society is prepared to recognize that expectation of privacy as objectively reasonable. *Betts*, 397 S.W.3d at 203; *see also Smith v. Maryland*, 442 U.S. 735, 740 (1979). Conner does not have standing to complain about the invasion of another's personal rights, and only after he establishes his standing to complain may we consider whether he suffered a substantive Fourth Amendment violation. *See Kothe*, 152 S.W.3d at 59.

In considering if a defendant has shown an objectively reasonable expectation of privacy, we examine the totality of the circumstances surrounding the search, including

8

(1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy.

*Betts*, 397 S.W.3d at 203–04 (quoting *Granados v. State,* 85 S.W.3d 217, 223 (Tex. Crim. App. 2002)); *Villarreal*, 935 S.W.2d at 138. This list of factors is non-exhaustive, and no single factor is dispositive. *Betts*, 397 S.W.3d at 204; *Granados,* 85 S.W.3d at 223. Additionally, a defendant has standing to challenge the search of a vehicle he does not own if he has permission from the owner to drive the vehicle or permission from another person authorized to give permission, or if he otherwise has the legal right to use and control the vehicle. *Freeman v. State*, 62 S.W.3d 883, 889 (Tex. App.—Texarkana 2001, pet. ref'd).

At the hearing on the first Motion to Suppress and on appeal, Conner argued that the officers did not have a legal right to be on the premises, that Conner had a right of privacy, and therefore, the officers did not have the right to have a plain view of the evidence in the truck. At the hearing, Conner's counsel argued that he had the door open and had "some type of possession of that vehicle" but did not own it. The State countered that Conner did not have standing as to the premises in question or the vehicle. The State specifically argued there was no evidence to support the factors that Conner had a legitimate privacy interest in the premises or vehicle. *See*

9

*Betts*, 397 S.W.3d at 203–04 (outlining factors to consider in determining whether a legitimate expectation of privacy exists). Conner did not call any witnesses or introduce any exhibits or evidence during the two hearings.

The State adduced evidence at the first suppression hearing that another individual, Freeman, was the landowner. Conner also failed to present evidence that he owned the truck where the officers found the drugs. Even though generally speaking, a person who borrows a vehicle has a subjective and reasonable expectation of privacy in a borrowed vehicle, there is no evidence in this record supporting an inference that Conner borrowed the pickup truck. *See Matthews v. State*, 431 S.W.3d 596, 607-608 (Tex. Crim. App. 2014) (recognizing expectation of privacy in borrowed cars). Without proof of permission to use the truck, the trial court was free to find that Conner failed to establish he had standing to challenge the search police conducted on the truck. *See Freeman*, 62 S.W.3d at 889–90 (noting the record contained no evidence the defendant had a legitimate expectation of privacy in a car when the defendant failed to introduce evidence showing he had permission from the owner or someone with authority to drive the car).

With respect to Conner having "a property interest or possessory interest in the place invaded[,]" officers testified they received conflicting information from Conner regarding whether he lived in an RV on the property. According to Officer Vincent, Conner's "story changed numerous times" while the officers were there.

*See Betts*, 397 S.W.3d at 203. Vincent testified that at one point, Conner denied he stayed at the property and told him he was only storing an RV at the property. Video and photographs the State introduced during the first suppression hearing showed RVs on the property away from the main residence and some distance from the truck where Prince seized the meth. Prince testified that the RV Conner might have stayed in was forty to fifty yards from where the truck was located and "[a]bsolutely not" curtilage. Vincent estimated the RV was approximately 100 feet from them on the other side of the driveway. While there was conflicting evidence that Conner may have had a possessory interest in one of the RVs, this does not show he had a possessory interest in Freeman's land or in the truck in question.

The trial court could also have reasonably found the evidence insufficient to support the other factors Conner needed to prove to establish he had an objectively reasonable expectation of privacy in the property that was searched. *See id.* at 203–04. While Prince's body camera video shows Freeman was aware Conner was on his property, Freeman was surprised the methamphetamine was there. Vincent testified they received information that Conner was storing stolen property at the location. From this evidence, the trial court could have concluded Conner's presence on the property with drugs was not legitimate and beyond the scope of the permission Freeman extended to him to be there. *Id.* at 203 (noting factors, including whether defendant was legitimately at the place invaded). Moreover, there was at least one

11

other individual working on a car in an open area near the driveway. Since Conner had the drugs in plain view, the trial court could have inferred that Conner had not taken the "normal precautions of those customarily taken by those seeking privacy[.]" *See id.* None of the evidence in the record shows that Conner "had complete dominion or control and the right to exclude others[]" from Freeman's property. *See id.* Vincent testified that neither Conner nor anyone else ever tried to exclude them from the premises. Prince also testified that nobody on the property told him to leave as he gathered evidence.

Deferring to the role of the trial court as the exclusive judge of the witnesses' credibility and examining the totality of the evidence in the light most favorable to the trial court's ruling, we conclude the trial court could have found the officers' testimony credible. *See id.* at 204; *Villarreal,* 935 S.W.2d at 138. The trial court could reasonably determine that Conner failed to meet his burden of showing he had a legitimate expectation of privacy as to the premises and truck and thus lacked standing to challenge the search. *See Villarreal,* 935 S.W.2d at 138; *Calloway v. State,* 743 S.W.2d 645, 650 (Tex. Crim. App. 1988) (noting defendant's burden to prove he had a legitimate expectation of privacy, that appellant offered no evidence on the motion to suppress and determining appellant did not sustain his burden). We conclude the trial court did not err when it denied Conner's Motion to Suppress the evidence found in the truck.

Conner next argues that his statements to police should be suppressed as "fruits of the poisonous tree" pursuant to *Wong Sun v. United States*. *See* 371 U.S. 471 (1963). The State counters that Conner failed to preserve this argument. Alternatively, the State contends that the error, if any, was harmless. Even assuming Conner preserved error, we have already determined Conner did not meet his burden to show he had a legitimate expectation of privacy in the premises or truck. Officers saw Conner as the only person reaching into this truck and Conner "appeared to be secreting something inside." There are four general situations which may constitute custody and thus require a *Miranda* warning: (1) if the suspect is physically deprived of his freedom in any significant way; (2) if a law enforcement officer tells the suspect not to leave; (3) if a law enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; or (4) if there is probable cause to arrest the suspect, and the law enforcement officer did not tell the suspect he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). The first three scenarios require a suspect's freedom of movement to be restricted to the degree associated with arrest, not merely that of an investigative detention. *State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013). Here, Conner's freedom of movement had not been restricted to the degree associated with arrest. *See id.* Specifically, he was not handcuffed, body camera video shows him freely walking around at the scene, and

Hardin County officers testified they did not arrest him and would have likely let him leave. This leaves the fourth scenario, which requires the manifestation of probable cause to be combined with other circumstances that would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *See id.*; *see also Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). This category will apply when the officer's knowledge of probable cause is communicated to the suspect or by the suspect to the officer. *Dowthitt*, 931 S.W.2d at 255. Although Vincent asked about the methamphetamine in the vehicle, and Conner admitted it was "a lot," prior to that admission, the record before us does not indicate he was in custody, as he freely moved around the scene, was not handcuffed, and was not confined. *See id.* When the officer asked about the methamphetamine in the truck and Conner admitted "a lot" of methamphetamine was in the truck, the manifestation of probable cause existed. *See id.* at 255–56 (noting that after defendant's admission, probable cause existed). However, that manifestation of probable cause alone is not enough. This last category requires that in addition to the manifestation of probable cause, it must be combined with other circumstances that would lead a reasonable person to believe he is under restraint to a degree associated with an arrest. The record before us does not show the existence of these other circumstances that would show such restraint, which included Officer Vincent's testimony that Conner was not under arrest, and they would let him leave,

14

in addition to body camera footage showing Conner moving around Freeman's property unimpeded when Officer Prince arrived.

The trial court did not err by denying Conner's Motion to Suppress the statement that there was "[a] lot" of methamphetamine in the truck, as the manifestation of probable cause was not combined with other circumstances that would lead a reasonable person to believe he is under restraint to a degree associated with arrest. *See id.*; *see also Saenz*, 411 S.W.3d at 496.

We overrule Conner's sole issue.

## CONCLUSION

Having overruled Conner's sole issue, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on November 17, 2022
Opinion Delivered December 14, 2022
Do Not Publish

Before Golemon, C.J., Kreger and Johnson, JJ.

15