

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00051-CR

---

MCKINLEY MANTRELL BRADFORD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR24230, Honorable Brock R. Smith, Presiding

---

December 30, 2025

MEMORANDUM OPINION[1]

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

McKinley Mantrell Bradford appeals his conviction for murder.  Here, he complains of the trial court's denying his motion to suppress oral statements and motion for mistrial.[2] We affirm.

---

[1] Because this appeal was transferred from the Second Court of Appeals, we apply its precedent should it conflict with that of the Seventh Court of Appeals.  TEX. R. APP. P. 41.3.

[2] We note that the State failed to favor us with an appellee's brief.

***Background***

John Freeman was fatally shot ten times in his home in Chico, Wise County, Texas. Following the discovery of his body a few days later, it was determined that he was likely killed on June 12, 2022. Authorities undertook an investigation of his last known movements and contacts. They learned that Freeman, an Army reservist, had gone to Fort Sill in Oklahoma for training and a ceremony and later travelled to another part of Oklahoma for recreation. He spent some of that weekend in the Ardmore and Lawton area with Gina Bradford, estranged wife of appellant.

Having learned that Freeman had been in Gina's company in the days before his murder, Texas Ranger Joe Espinoza wanted to talk to Gina. He, along with Investigator Matt Thomas of the Wise County Sheriff's Office and fellow Texas Ranger Travis Dendy, went to the home she had shared with appellant in Lawton, Oklahoma. Though Gina was not present at that time, appellant was and spoke with the visitors. During the conversation, the officers learned that the Bradfords were in the process of divorcing and that appellant made a recent impromptu trip to Texas around June 12. Soon, Gina arrived at the abode. That led to the officers asking appellant if he would be willing to come to the police station to talk in a more private setting. He agreed and followed the officers in his own car.

Appellant and the officers later returned to the home and discussed other evidence such as guns and security camera footage. Thereafter, all returned to the police station, while appellant again drove himself. There, appellant consented to a search of his home and car. And, during the final interaction at the station, Espinoza explained to appellant that developing facts tended to incriminate appellant. Though acknowledging the same,

2

appellant, nevertheless, gave the officers his cell phone and consented to the seizure of his vehicle. The officers thanked him for his cooperation and promised to "get out of your hair." Appellant then left. And, during these several exchanges, officers never mirandized appellant. See Tex. Code Crim Proc. art. 38.22.

Soon, officers learned that tests performed on the seized vehicle yielded positive results for human blood. This and video evidence of appellant's stay in a Wichita Falls hotel, indicated appellant shot Freeman. The issuance of an arrest warrant ensued, which resulted in appellant's arrest.

### Issues 1 through 4: Motion to Suppress

At issue in appellant's first four points are the oral statements made by appellant while conversing with law enforcement as described above. Appellant maintains that the oral statements were involuntary and inadmissible due to the absence of *Miranda* warnings. We overrule the issue.

The standard of review is settled and discussed in *Ochoa v. State*, 707 S.W.3d 344 (Tex. Crim. App. 2024). We apply it here.

In *Miranda*, the United States Supreme Court determined that an accused, held in custody, must be given required warnings before questioning. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003). The same applies with Article 38.22 warnings; they too are required only in settings of custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); Tex. Code Crim. Proc. art. 38.22, § 3(a). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*,

3

384 U.S. at 444. Furthermore, "custody" for purposes of Article 38.22 is consistent with the meaning of "custody" under *Miranda*. *Herrera*, 241 S.W.3d at 526. And, in determining whether an individual was in custody, the question to answer is whether a reasonable person would perceive the detention to be a restraint on his movement "comparable to . . . formal arrest," given all the objective circumstances. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012); *see Wilson v. State*, 442 S.W.3d 779, 784 (Tex. App.—Fort Worth 2014, pet. ref'd). The evidence at bar does not support an affirmative answer to that question.

Regarding the exchanges at the station, appellant 1) was given the option to come to the police station, 2) drove himself to the police station, 3) was invited to move about freely once there, and 4) came and went under his own volition throughout the day. For example, when officers got up to leave to take a break, they left the door open and invited appellant to take a break. And, that several exchanges occurred at the police station does itself not equate custody. *See Rathbun v. State*, 96 S.W.3d 563, 566 (Tex. App.—Texarkana 2002, no pet.). Though officers and appellant agreed that circumstances did not bode well for him, appellant remained free to come and go; indeed, he left. *Accord Williams v. State*, 513 S.W.3d 619, 631–33 (Tex. App.—Fort Worth 2016, pet. ref'd) (observing that, even though the interview discussed facts that were inconsistent with appellant's version of events, the objective circumstances, including indicia that appellant was free to leave at any time, were such that a reasonable person would not have believed that her freedom of movement was restrained to the degree associated with a formal arrest).

4

As for discussions at the home, police originally arrived there in search of Gina. The discussions transpiring there with appellant, though, were open. He was forthcoming and made information readily available to officers. He also consented in writing to a search of his home and vehicle and to seizure of his vehicle and mobile phone. And, when officers sought permission to look at items of interest during the search, he generally accommodated them, as evinced by his granting permission for them to take a firearm akin to that used in the murder.

Appellant's cooperation, it would seem, was not prompted by the tactics of officers; rather, his purpose was a self-serving one. He indicated he wanted to cooperate as a way of exonerating himself.

In reviewing the objective circumstances between officers and appellant at his home and in the station, the trial court had sufficient evidence enabling it to legitimately conclude that appellant was never in custody when speaking to the officers. That is, it had evidentiary basis to support the determination that a reasonable person in appellant's position would not believe his freedom of movement was significantly restrained to the degree associated with arrest. So, the absence of *Miranda* and Article 38.22 warnings mattered not, which means the trial court did not abuse its discretion in denying the motion to suppress.

### Issue 2: Denial of Mistrial

Next, appellant contends the trial court abused its discretion in denying his motion for mistrial. The basis for the motion purportedly arose when the State violated an agreement with appellant's counsel. The agreement pertained to reiterating in open court the substance of an interview with appellant's son. We overrule the issue.

5

According to the record, the State indicated it would forgo questioning the witness about what appellant's son said in the interview, as evinced by this exchange:

APPELLANT: Well, I would – I would – I mean, the interview is not admissible, obviously. I think what he's gonna – I'm going to object to what he's going to say about what was said in the interview.

STATE: We don't intend to ask him any details about what [the child] said during the interview.

THE COURT: Just the fact that he had one?

STATE: Exactly.

THE COURT: All right.

APPELLANT: That's fine.

STATE: And that it did not contain any definite information about –

APPELLANT: Then that'll be fine. Then I don't have an objection.

THE COURT: All right. Then let's bring the jury in. With all those understandings, that's what I'll expect to see while – when the jury comes back.

Thereafter the State pursued the following line of questioning:

Q. At that time were you aware that the Defendant, McKinley Bradford, had checked his child out of day care that morning and spent time with him?

A. That was understood during the forensic interview.

Q. Okay. But there had been some contact right before the interview?

A. Yes, ma'am.

Q. Is there any concern about influence when you have somebody that maybe the interview might be about having contact with that person that's being interviewed?

A. Yes, ma'am.

APPELLANT: Judge, can we approach the bench?

THE COURT: Yes.

6

(At the bench, on the record.)

APPELLANT: I'm going to object to anything further. The – the – the proffer of testimony was that there was no significant information, and now here we are hearing significant information.

The trial court sustained appellant's objection to that line of questioning and instructed the jury to disregard any question or answer pertaining to whether appellant removed the child from day care shortly before the interview. It then denied appellant's motion for mistrial.

Comparing the substance of the foregoing exchanges, we note that the question leading to appellant's objection dealt not with what the son said at the interview. It dealt with appellant's actions before the interview occurred. Thus, the State did not breach the accord at issue, even though the trial court sustained appellant's complaint. And, the State not having done so, there was no need to grant mistrial due to a supposed breach.

Second, even if one were to somehow interpret the exchange as evincing effort to breach the agreement, sustaining the complaint and instructing the jury to disregard questions and answers cured any harm. This is especially so since the State abandoned the matter, and the substance of the boy's comments were withheld from juror ears. *See Kirk v. State*, 199 S.W.3d 467, 479 (Tex. App.—Fort Worth 2006, pet. ref'd) (stating that "[t]he jury is presumed to follow the trial court's instructions in the manner presented").

Having overruled appellant's five issues, we affirm the trial court's judgment.


Brian Quinn
Chief Justice


Do not publish.

7