ACCEPTED
06-15-00023-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/5/2015 12:00:00 AM
DEBBIE AUTREY
CLERK

# SIXTH COURT OF APPEALS

## 06-15-00023-CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

10/5/2015 8:51:00 AM

DEBBIE AUTREY
Clerk

## *Jessica Boyett, Appellant*

## *v.*

## *State of Texas, Appellee*

### On Appeal from the 6th Judicial District Court
### Lamar County, Texas
### No. 25505

## Appellant's Brief

**Kristin R. Brown**
**18208 Preston Road, Ste. D9375**
**Dallas, Texas 75252**
**Phone: 214-466-3909**
**Fax: 214-481-4868**
kbrown@idefenddfw.com
**Texas Bar No. 24081458**
**Attorney for Appellant**

*If the Court's decisional process will be significantly aided by oral orgument, oral argument is requested*

# I. Identities of Parties and Counsel

Jessica Boyett, Appellant.

Kristin R. Brown, attorney for Appellant on appeal

Don Halsam, attorney for Appellant at trial

State of Texas, Appellee.

Gary Young, Lamar County District Attorney

Laurie Pollard, Lamar County Assistant District Attorney

Hon. Will Biard, Presiding Judge, 6th Judicial District Court, Lamar County

## II. Table of Contents

I.  Identities of Parties and Counsel ...................................................... 2

II.  Table of Contents ...................................................................... 3

III.  Index of Authorities .................................................................. 5

IV.  Statement of the Case and Jurisdiction ............................................. 10

V.  Statement Regarding Oral Argument .................................................. 12

VI.  Issues Presented ...................................................................... 13

VII.  Facts ................................................................................... 14

    1.  Evidence presented at the hearing on the motion to suppress ..................... 14

    2.  Evidence presented to prove guilt ............................................. 21

VIII.  Summary of the Arguments .......................................................... 22

IX.  Argument ............................................................................... 23

    1.  Issue One: The trial court erred when it denied Appellant's motion to suppress evidence because the evidence was illegally obtained as a result of an unreasonable seizure of Appellant without a warrant and without reasonable suspicion that he had been or would soon be engaging in criminal activity, including for any offense under Texas Transportation Code § 545.060. ..................... 23

        i.  Introduction ................................................................ 23

        ii.  Standard of review ......................................................... 26

        iii.  Law regarding investigative detentions ................................... 26

        iv.  There was no justification for the stop of Appellant under the Transportation Code, and this alone should cause this court to reverse and remand this case back to the trial court ................. 30

        v.  The information about pseudoephedrine purchases did not amount to reasonable suspicion to initiate a Terry investigative detention ..................................................... 33

        vi.  There was no justification for the search of Appellant's vehicle and his arrest ..................................................... 35

        vii.  Conclusion ................................................................ 43

    2.  Issue Two: The trial court erred when it denied Appellant's motion to suppress his recorded statement because: (1) it was

given in response to custodial interrogation by the police; (2) it was obtained as a result of his illegal arrest; and (3) it was not shown to be freely and voluntarily made without compulsion or persuasion as required by Texas Code of Criminal Procedure Article 38.21. .......................................................................................... 44

    **i.** The confession was tainted by the unlawful arrest ............................... 44

    **ii.** The confession was coerced ................................................................. 45

    **iii.** Conclusion ........................................................................................ 50

3. Issue Three: The judicial confession offered in support of Appellant's plea of guilty was insufficient to show guilt of criminal conspiracy, which is required by Texas Code of Criminal Procedure Article 1.15. .................................................................. 50

    **i.** Argument ............................................................................................ 50

    **ii.** Conclusion .......................................................................................... 55

**X.** Conclusion and Prayer ............................................................................ 55

**XI.** Certificate of Service .............................................................................. 56

**XII.** Certificate of Compliance with Tex. Rule App. Proc. 9.4 ....................... 56

4

## III. Index of Authorities

## Cases

*Alvarado v. State,* 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)....................45, 50

*Amador v. State,* 275 S.W.3d 872, 878 (Tex. Crim. App. 2009)..........................39

*Arizona v. Fulminante,* 499 U.S. 279, 287 (1991)............................................47

*Arizona v. Johnson,* 555 U.S. 323, 333 (2009)................................................42

*Aviles v. State,* 23 S.W.3d 74, 77 (Tex. App. Houston [14th Dist.] 2000, *no pet.*)..............................................................................33

*Baggett v. State,* 342 S.W.3d 172, 175 (Tex. App. Texarkana 2011)..............................................................................................52

*Balentine v. State,* 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) ......................29

*Bender v. State,* 758 S.W.2d 278 (Tex. Crim. App. 1988) ..............................55

*Blackburn v. Alabama,* 361 U.S. 199, 206 (1966)..........................................48

*Brown v. Mississippi,* 297 U.S. 278 (1936) ..................................................47

*Brown v. State,* 605 S.W.2d 572, 577 (Tex. Crim. App. 1980)..........................44

*Brown v. Texas,* 443 U.S. 47, 48-49 (1979)..................................................27

*Byrd v. State,* 187 S.W.3d 436, 441 (Tex. Crim. App. 2005)............................26

*Byrd v. State,* 336 S.W.3d 242, 254 (Tex. Crim. App. 2011)............................55

*Cada v. State,* 334 S.W.3d 766, 772-773 (Tex. Crim. App. 2011)......................................................................................55

*California v. Hodari D.,* 499 U.S. 621, 627-628 (1991)..................................27

*Cantu v. State,* 817 S.W.2d 74, 77 (Tex. Crim. App. 1991)............................46

*Carroll v. State,* 139 S.W.2d 821, 823 (Tex. Crim. App. 1940)........................26

*Collins v. State,* 352 S.W.2d 841, 843 (Tex. Crim. App. 1961)....................46, 47

*Connor v. State,* 773 S.W.2d 13, 13-14 (Tex. Crim. App. 1989) ......................43

*Cooper v. State,* 537 S.W.2d 940, 943 (Tex. Crim. App. 1976)........................51

*Crittenden v. State,* 899 S.W.2d 668 (Tex. Crim. App. 1995)..........................40

*Cuadros-Fernandez v. State,* 316 S.W.3d 645, 658 (Tex. App. Dallas 2009, *no pet.*)............................................................................25

*Dancy v. State,* 728 S.W.2d 772, 772 (Tex. Crim. App. 1987) ........................46

*Davenport v. State*, 299 S.W.3d 859, 861 (Tex. App. Eastland 2009, *no pet.*) ................................................................................. 34

*Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) ............................... 40

*Delafuente v. State*, 414 S.W.3d 173, 177, 178 (Tex. Crim. App. 2013). ................................................................................. 29

*Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007) .............................. 45

*Dinnery v. State*, 592 S.W.2d 343, 348 (Tex. Crim. App. 1979) ............................ 54

*Duran v. State*, 552 S.W.2d 840, 842-843 (Tex. Crim. App. 1977) ................................................................................. 52

*Escobedo v. Illinois*, 378 U.S. 478 (1964) ........................................................ 43

*Farmah v. State*, 883 S.W.2d 674, 679 (Tex. Crim. App. 1994) ............................ 44

*Farr v. State*, 519 S.W.2d 876, 880 (Tex. Crim. App. 1975) ............................... 49

*Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) ............................... 29

*Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) .............................. 29

*Freeman v. State*, 62 S.W.3d 883, 888 (Tex. App. Texarkana 2001, *pet. ref.*) ................................................................................. 36

*Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) ............................... 29

*Garcia v. State*, 829 S.W.2d 830, 833 (Tex. App. Dallas 1992, *no pet.*) ................................................................................. 49

*Gentry v. State*, 770 S.W.2d 780, 789 (Tex. Crim. App. 1988) ............................. 49

*Golemon v. State*, 247 S.W.2d 119, 121 (Tex. Crim. App. 1952) .......................... 47

*Gonzales v. State*, 966 S.W.2d 521, 523 (Tex. Crim. App. 1998) .......................... 23

*Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012) ............................. 27

*Hardesty v. State*, 667 S.W.2d 130, 134 (Tex. Crim. App. 1984) .......................... 48

*Jackson v. Denno*, 378 U.S. 368, 376 (1964) .................................................... 48

*Johnson v. State*, 365 S.W.3d 484, 489 (Tex. App. Tyler 2012, *no pet.*) ................................................................................. 32

*Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) ............................... 45

*Kraft v. State*, 762 S.W.2d 612, 615 (Tex. Crim. App. 1988) ............................... 23

*Krulewitch v. United States*, 336 U.S. 440 (1949) .............................................. 26

*Landon v. State*, 222 S.W.3d 75, 79 (Tex. App. Tyler 2006, *no pet.*) ................................................................................... 52

*Le v. State*, 463 S.W.3d 872 (Tex. Crim. App. 2015) ................................. 44

*Leming v. State*, 454 S.W.3d 78 (Tex. App. Texarkana 2014, pet. granted) ................................................................... 32

*Leza v. State*, 351 S.W.3d 344, 349, 351 (Tex. Crim. App. 2011) ................................................................................... 45

*Lopez v. State*, 223 S.W.3d 408, 415 (Tex. App. Amarillo 2006, *no pet.*) ................................................................... 36

*Lopez v. State*, 708 S.W.2d 446, 448-449 (Tex. Crim. App. 1986) ................................................................................... 52

*Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004) ................ 48

*Mendez v. State*, 56 S.W.3d 880, 891 (Tex. App. Austin 2001, *no pet.*) ................................................................... 43

*Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009) ................ 51, 52

*Menefee v. State*, No. 12-07-00001-CR, 2010 Tex. App. LEXIS 6665, 2010 WL 3247816 (Tex. App. Tyler Aug. 18, 2010, *no pet.*) (mem. op., not designated for publication) ................ 52

*Miller v. Fenton*, 474 U.S. 104, 109 (1985) .................................... 47

*Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App. Fort Worth 1998, *no pet.*) ................................................................... 42

*Oursbourn v. State*, 259 S.W.3d 159, 170 (Tex. Crim. App. 2008) ................................................................................... 48

*Payne v. Arkansas*, 356 U.S. 560, 561 (1958) ................................. 48

*Prince v. State*, 231 S.W.2d 419, 421 (Tex. Crim. App. 1950) ................ 47

*Reck v. Pate*, 367 U.S. 433, 440-441 (1961) .................................. 48

*Reeves v. State*, 969 S.W.2d 471, 485 (Tex. App. Waco 1998, *no pet.*) ................................................................... 37

*Richardson v. State*, ___ S.W.3d, No. 10-14-00217-CR, 2015 Tex. App. LEXIS 7066 (Tex. App. Waco, July 9, 2015) (designated for publication) .................................................. 41

*Rodriguez v. United States*, 575 U.S. ___, 135 S.Ct. 1609, 1613-1616 (2015) ................................................................... 41

*Rogers v. Richmond*, 365 U.S. 534, 540 (1961) ...................................................48

*Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App.1990) ...........................46

*Sherman v. State*, 532 S.W.2d 634, 636 (Tex. Crim. App. 1976).......................49

*Sims v. State*, 98 S.W.3d 292, 295 (Tex. App. Houston [1st Dist.] 2003, *no pet.*) ...........................................................................42

*Sinegal v. State*, 582 S.W.2d 135, 137 (Tex. Crim. App. 1979)...........................49

*Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991) ......................................................................................48

*State v. Alderete*, 314 S.W.3d 469, 473 (Tex. App. El Paso 2010, *no pet.*) ..........................................................................29

*State v. Crisp*, 74 S.W.3d 474, 481 (Tex. App. Waco 2002, *no pet.*) ............................................................................................44

*State v. Houghton*, 384 S.W.3d 441, 446-447 (Tex. App. Fort Worth 2012, *no pet.*)....................................................................30

*State v. James*, Nos. 03-07-00210-CR, 03-07-00211-CR, 03-07-00212-CR, 03-07-00213-CR, 2007 Tex. App. LEXIS 8695, 2007 WL 3225374, at *4 (Tex. App. Austin, Oct. 31, 2007, *no pet.*) (mem. op.) (not designated for publication).............................................................34

*State v. Mendoza*, 365 S.W.3d 666, 669-670 (Tex. Crim. App. 2012) .......................................................................................26

*State v. Rauch*, 586 P.2d 671, 678 (Idaho 1978)..............................................43

*State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008).......................................................................................39

*Taylor v. State*, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980) ...........................46

*Terry v. Ohio*, 392 U.S. 1, 22 (1968) ...........................................................29, 39

*Thornton v. State*, 601 S.W.2d 340, 342-343 (Tex. Crim. App. 1980)......................................................................................54

*Thornton v. State*, 601 S.W.2d 340, 349 (Tex. Crim. App. 1979)........................54

*Trevino v. State*, 519 S.W.2d 864, 866 (Tex. Crim. App. 1975) .........................51

*Tullos v. State*, 698 S.W.2d 488, 490 (Tex. App. Corpus Christi 1985, *pet. ref.*)....................................................................51, 54

*United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ...................................26

8

*Valdez v. State*, 555 S.W.2d 463, 464 (Tex. Crim. App. 1977).........................51

*Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).........................26

*Vargas v. State*, 852 S.W.2d 43, 44 (Tex. App. El Paso 1993, *no pet.*).........................46

*Vicioso v. State*, 54 S.W.3d 104, 110, 111 (Tex. App. Waco 2001, *no pet.*).........................44

*Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013).........................26, 27, 29

*White v. State*, 574 S.W.2d 546, 547 (Tex. Crim. App. 1978).........................36

*Whren v. United States*, 517 U.S. 806, 813 (1996).........................40

*Williams v. State*, 06-07-00132-CR, 2008 Tex. App. LEXIS 2920 (Tex. App. Texarkana, April 24, 2008, *no pet.*) (not designated for publication).........................31

*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).........................51

**Statutes**

Tex. Code Crim. Proc. Art. 1.15 (2015).........................51

Tex. Code Crim. Proc. Art. 38.22 (2013).........................45

Tex. Health & Safety Code § 481.112(a) & (c) (2013).........................10, 11, 53

Tex. Health & Safety Code § 481.124(b)(3) (2013).........................38

Tex. Pen. Code § 15.03(a) (2013).........................10, 11, 53

Tex. Transp. Code § 545.060 (2013).........................30

**Rules**

Tex. Rule App. Proc. 25.2(a)(2) (2015).........................11, 24

Tex. Rule App. Proc. 26.2(a) (2015).........................11

Tex. Rule App. Proc. 39 (2015).........................12

Tex. Rule App. Proc. 9.4 (2015).........................57

Tex. Rule App. Proc. 9.5 (2015).........................56

Tex. Rule Evid. 802(e)(2)(E).........................26

**Constitutional Provisions**

Tex. Const. Art. 1, § 19.........................46

U.S. Const. Amend. IV.........................39

To the Honorable Justices of the Court of Appeals:

Appellant Jessica Boyett submits this Brief in support of the appeal:

## IV. Statement of the Case and Jurisdiction

This is an appeal of a *Judgment of Conviction by Court* ("*Judgment*") and sentence for Conspiracy to Manufacture or Deliver a Controlled Substance in Penalty Group 1 under cause number 25505, in which Appellant was sentenced to five years in prison, probated for three years, and fined $500.00. (CR, 188-189).[1] On November 14, 2013, a grand jury indicted Appellant, alleging that on or about September 24, 2013, in Lamar County, Texas, Appellant intentionally manufactured a controlled substance (methamphetamine) in an amount of more than one gram but less than four grams, and in doing so, Appellant agreed with Rodney Boyett that they would engage in conduct that would constitute this offense, perform an overt act in pursuance to the agreement, which was possessing or transporting a chemical substance, specifically liquid HEET and peroxide. *See* Tex. Health & Safety Code § 481.112(a) & (c) (2013); Tex. Pen. Code § 15.03(a) (2013).

Initially, Appellant pleaded "not guilty. (RR, 6). After a jury was selected and impaneled, the trial court heard Appellant's motion to suppress evidence that

---

[1] The record on appeal consists of the Clerk's Record, is cited by "CR" followed by the page number, and one volume of the reporter's record, which is cited as "RR" followed by the page number.

had been filed on April 22, 2014, more than nine months earlier. (CR, 73-75). On February 3, 2015, the morning that the jury trial was set to begin, the trial court denied the motion. (CR, 170).

Under a plea agreement, Appellant pleaded guilty to Conspiracy to Manufacture or Deliver a Controlled Substance in Penalty Group 1, and was sentenced to five years in prison, probated for three years, and fined $500.00. (CR, 188-189). Tex. Health & Safety Code § 481.112(a) & (c) (2013); Tex. Pen. Code § 15.03(a) (2013).

On February 4, 2015, Appellant filed a timely notice of appeal. (CR, 188). *See* Tex. Rule App. Proc. 26.2(a) (2015). The trial court signed a Certification of Appellant's Right of Appeal, certifying that although Appellant has no right to appeal, he may appeal the trial court's ruling on the motion to suppress and "all other pretrial motions." (CR, 183). *See* Tex. Rule App. Proc. 25.2(a)(2) (2015). As a result, this Court has jurisdiction over this appeal.

## V.  Statement Regarding Oral Argument

Although Appellant believes the facts and arguments are thoroughly presented in this Brief, if the Court's decisional process will be significantly aided by oral argument, Appellant will be honored to present oral argument. *See* Tex. Rule App. Proc. 39 (2015).

## VI. Issues Presented

**Issue One:** The trial court erred when it denied Appellant's motion to suppress evidence because the evidence was illegally obtained as a result of an unreasonable seizure of Appellant without a warrant and without reasonable suspicion that he had been or would soon be engaging in criminal activity, including for any offense under Texas Transportation Code § 545.060

**Issue Two:** The trial court erred when it denied Appellant's motion to suppress her recorded statement because: (1) it was given in response to custodial interrogation by the police; (2) it was obtained as a result of his illegal arrest; and (3) it was not shown to be freely and voluntarily made without compulsion or persuasion as required by Texas Code of Criminal Procedure Article 38.21.

**Issue Three:** The judicial confession offered in support of Appellant's plea of guilty was insufficient to show guilt of criminal conspiracy, which is required by Texas Code of Criminal Procedure Article 1.15.

## VII. Facts

### 1. Evidence presented at the hearing on the motion to suppress

Appellant and her husband Rodney Boyett were suspected by the Paris police department of engaging in "pill runs," which is described as the purchasing of pseudoephedrine in small quantities from multiple pharmacies not for medicinal purposes, but as an ingredient needed to manufacture methamphetamine. (RR, 9-15). Deputy Sheriff Amis focused his attention on Appellant and Rodney Boyett based on information he could receive from a computerized pharmacy pseudoephedrine sales reporting system. (RR, 9-10).

On September 24, 2013, Amis requested that Officer Foreman of the Paris police to assist him in the investigation. (RR, 9) Amis had detected that Appellant had just purchased a quantity of pseudoephedrine at the CVS pharmacy at 507 Clarksville and he wanted Foreman to try to visually confirm whether Rodney Boyett would go to a second CVS pharmacy to make a pseudoephedrine purchase at that pharmacy. (RR, 13-14).

The purchases made prior to September 24, 2013 were deemed suspicious because Appellant and Rodney Boyett "had the same address on their driver's license[s] and were buying pills in the Paris area at different pharmacies in a close time frame." (RR, 12). Further, Foreman believed Appellant and Rodney Boyett lived in Rattan, Oklahoma and that "[o]ver the last several years it [had been] very

common for people involved in methamphetamine production in Oklahoma to come to the Paris area and buy pills in an attempt to avoid detection by law enforcement in the area where they live." (RR, 14). Foreman had been involved in ten to twenty investigations of "pill run" cases over the last several years all involved Oklahoma residents. (RR, 15). All involved traffic stops. (RR, 59-60).

Appellant, Rodney Boyett, and their vehicle were located by Foreman at the Lamar Avenue CVS. (RR, 16-17). Appellant and Rodney Boyett left that CVS and went in the Home Depot store for ten to twenty minutes. (RR, 16-17). Appellant and Rodney Boyett then exited Home Depot and went to Walmart. (RR, 19). Foreman, Amis, and Moore, each traveling in their own unmarked police vehicles, followed Appellant and Rodney Boyett. (RR, 19-20). Appellant and Rodney Boyett went inside the Walmart for a short while, and then left and traveled "back toward Oklahoma." (RR, 17-21).

Foreman explained the significance with this activity as follows: Walmart has a pharmacy that sold pseudoephedrine and sold other items associated with the manufacture of methamphetamine, such as Coleman camp fuel, liquid Heet, Drano products, coffee filters, rubber tubing, and peroxide. (RR, 20). Further, Foreman explained that "[P]ersons usually who come to Paris to buy pseudoephedrine for the illegal purpose of manufacturing methamphetamine make other stops to pick up the other ingredients." (RR, 20). To Foreman's knowledge, the stops occur at

Home Depot, Atwoods, Tractor Supply, Walmart, Walgreens, and CVS. (RR, 20-21).

Foreman and the other officers followed Appellant and Rodney Boyett after they headed toward North Main (Highway 271) from the Walmart. (RR, 21). In the 1100 block of the northeast loop, Foreman saw what he characterized as a traffic violation, failure to maintain a single lane, which he described as a vehicle's left-side tires crossing over the centerline into the left lane before going back. (RR, 21). Foreman conducted a traffic stop. (RR, 22). He waited to signal Appellant's car to stop because "there was really heavy traffic..." (RR, 22).

After the vehicles exited from the loop onto North Main, Foreman was able to "conduct" the stop around 5:00 p.m. because Appellant and Rodney Boyett had to stop at a red light (at the intersection of Main and Stone Avenue). (RR, 23, 36). Foreman made contact with Appellant and Rodney Boyett, which he described as follows: "I identified myself, explained as to why [they] had been stopped, asked for identification. I get that identification. I asked [Rodney Boyett] to exit the vehicle so I can speak with him and began talking to him about his activity for the day...[A]sked him if they had purchased pseudoephedrine, where they had purchased it." (RR, 21-25, 36).

Foreman said that Rodney Boyett told him "they had purchased pseudoephedrine at Walmart." (RR, 25-26). Foreman believed Appellant was not

16

being truthful because Amis had not received a report of such a sale. (RR, 26). Foreman's next question was whether Rodey Boyett "used methamphetamine," to which, according to Foreman, Rodney Boyett replied that he did. (RR, 26). Foreman then asked Appellant "if he had any ingredients used for the purpose of manufacturing methamphetamine in the vehicle," and was told "that he (Rodney Boyett) had liquid heet inside the vehicle." (RR, 26). Foreman clarified that before getting that response he told Rodney Boyett that the police knew that Appellant and Rodney Boyett had just purchased pseudoephedrine at different locations in Paris in a short timeframe, and that he was asking about "toluene, camp fuel, fuel, Red Devil Lye, liquid heet, peroxide." (RR, 28-29).

Foreman then spoke with Appellant. (RR, 30). She told Foreman that she did not use methamphetamine or have any ingredients to make methamphetamine. (RR, 30). Within five minutes after he stopped the vehicle, and without a warrant, Foreman "went into their vehicle to search...for the ingredients used to manufacture methamphetamine." (RR, 30-32). Foreman described the search being based on "probable cause to believe that there was evidence of a crime in the vehicle." (RR, 32). He did not specify what crime or evidence.

In the passenger compartment of the vehicle, Foreman located two boxes containing 20 pseudoephedrine tablets each, two bottles of liquid heet, rubber tubing, and three bottles of hydrogen peroxide. (RR, 33, 65). Foreman seized

those items and then placed Appellant and Rodney Boyett under arrest for "possession of certain chemicals." (RR, 32-34, 65). *See* Tex. Health & Safety Code § 481.124(a) (2013). Foreman arranged for the transport of Appellant and Rodney Boyett to the police department, and seized their vehicle. (RR, 33–34). Foreman stated that before towing the vehicle, someone would have made an inventory search of the vehicle. (RR, 34).

After she was booked in, Appellant was twice interviewed by Foreman and Officer Moore in the CID room. (RR, 36-40). Although admitting that she used methamphetamine, Appellant would not admit to transporting anything with the intent to manufacture methamphetamine. (RR, 41-42). Appellant was returned to the booking area where she may have heard Foreman and Moore discussing whether they should interview Rodney Boyett. (RR, 42-43). According to Foreman, Appellant then asked if she could speak with the officers a second time so that she could tell them "the truth." (RR, 43). Foreman claimed he learned "just a little bit more" because:

> "(S)he (Appellant) did indicate that liquid heet was used to manufacture methamphetamine. She said that she had used methamphetamine the previous day by shooting it up with a syringe, that her and Rodney both had used methamphetamine the previous day after he had gotten off work. They both used with a syringe. . . . She said that the items found in her vehicle were going to be used for them to get methamphetamine. . . . She had talked about Rodney Boyett cooking methamphetamine. It was cooked on a shed on their property, in relation of their property to Mr. Boyett's father's house, her use of methamphetamine, I believe, two to three times a week. . . .

18

She said that she didn't know how to cook, but she had been present while it was cooked, but that she does not know how to cook it..."

(RR, 44–45, 49).

Rodney Boyett was kept at the police department overnight because the officers wanted to ask him questions, but Rodney Boyett needed sleep and "it had been a very long day." (RR, 50). Thus, Rodney Boyett was not interrogated until the following morning. During the interrogation the following morning, Foreman spoke with Rodney Boyett about his methamphetamine use. (RR, 51). Rodney Boyett showed a needle mark on his arm to Foreman, where he had injected methamphetamine and advised that he: (1) used methamphetamine since age 14; (2) learned how to produce methamphetamine while working in the construction business; and (3) had been making methamphetamine in a shed on his property in Oklahoma using the "red phosphorous method." (RR, 51-52).

Rodney Boyett testified that before the formal interrogation shown on the recording, Foreman refused to allow him to speak with an attorney and told him that unless Rodney Boyett told him what he wanted to hear, his vehicle would be taken from him. (RR, 79–80, 92). Rodney Boyett also stated that recording failed to include at the end a discussion about whether Rodney Boyett had earned the return of his vehicle. (RR, 81–82, 94). Foreman earlier declared that no promises or threats were made against Appellant and Rodney Boyett in connection with their providing information about their crime. (RR, 38, 42, 45, 46, 48, 53, 58, 65-66).

19

With one exception, Foreman was never asked to specifically deny the accusations in that regard made by Appellant or Rodney Boyett. (RR, 69). Foreman admitted that he encouraged Rodney Boyett to speak with him without waiting to consult with an attorney, which could take "a month" or more. (RR, 46).

Rodney Boyett also testified that soon after he arrived at the police department, Foreman asked him questions about what he or Appellant had planned to do with the items found in the truck. (RR, 85-86). Although Rodney Boyett was in custody, no *Miranda* warning was provided in connection with that questioning. Rodney Boyett offered Foreman an innocent explanation for his possession of each of the items. (RR, 95-96). Appellant confirmed these events, adding that the officers would not allow her to contact her children, make any arrangements for care of their animals, or make any phone calls. Appellant also stated that Moore tried to compel her to make an incriminatory statement, testifying that Moore told her:

> "I know what y'all are doing. I know that y'all are cooking drugs. I know that y'all are meth users, and you're going to tell us this. Because if you don't, we can tell the Judge and the DA whatever we want, whatever our imagination can come up with, that's what we'll tell them. And they won't believe you. They will believe us. We've been in this for too many years."

(RR, 107). Appellant stated this questioning prompted her to ask for a lawyer, to which Moore replied, "No, you're going to talk to us first." (RR, 107). Appellant further stated that Moore told her:

20

"[Y]ou're looking at going to prison for 10 years, and you're not going to get to see them step-kids and your family for a long time. You're going to tell us what we want to know. And if you do this, then you can go home, and this will all just go away. If you tell us what we want to know, what we want to hear, then we can talk to the DA, and it will all just work itself out. There won't be no jail time, and you get to go home."

(RR, 107-108).

## 2. Evidence presented to prove guilt

The evidence of guilt came in the form of a written judicial confession in which Appellant admitted that she had agreed with Rodney Boyett at some point that they would engage in conduct that would constitute the offense of manufacture of the controlled substance, methamphetamine, in an amount of one gram or more but less than four grams, and in pursuance to that agreement performed the overt act of possessing or transporting a chemical substance, to wit: liquid HEET and peroxide, with intent to unlawfully manufacture methamphetamine. (CR, 181, 5; RR, 178).

## VIII. Summary of the Arguments

Appellant presents the following arguments: First, Appellant will argue that the trial court erred when it denied Appellant's motion to suppress evidence because the evidence was illegally obtained as a result of an unreasonable seizure of Appellant without a warrant and without reasonable suspicion that he had been or would soon be engaging in criminal activity, including for any offense under Texas Transportation Code § 545.060. Second, Appellant will argue that the trial court erred when it denied Appellant's motion to suppress her recorded statement because: (1) it was given in response to custodial interrogation by the police; (2) it was obtained as a result of her illegal arrest; and (3) it was not shown to be freely and voluntarily made without compulsion or persuasion as required by Texas Code of Criminal Procedure Article 38.21. Finally, Appellant will argue that the judicial confession offered in support of her plea of guilty was insufficient to show guilt of criminal conspiracy, which is required by Texas Code of Criminal Procedure Article 1.15.

Appellant will ask this Court to reverse the Judgment and sentence and: (1) find and declare that Appellant's motion to suppress should have been granted; (2) order that Appellant is entitled to withdraw her plea of guilty, and (3) remand this case for a new trial.

# IX. Argument

1. **Issue One:** The trial court erred when it denied Appellant's motion to suppress evidence because the evidence was illegally obtained as a result of an unreasonable seizure of Appellant without a warrant and without reasonable suspicion that she had been or would soon be engaging in criminal activity, including for any offense under Texas Transportation Code § 545.060.

   **i. Introduction**

The police in this case obtained evidence using tactics that violated Appellant's rights under the Fourth Amendment and Texas Code of Criminal Procedure Article 38.23(a). After the trial court denied Appellant's motion to suppress evidence, Appellant elected to change her plea from not guilty to guilty. If this ruling was erroneous, then Appellant's plea was involuntary or conditional. She is thus entitled to have this Court review the correctness of the trial court's decisions about the admissibility of the evidence. *See Gonzales v. State*, 966 S.W.2d 521, 523 (Tex. Crim. App. 1998) and *Kraft v. State*, 762 S.W.2d 612, 615 (Tex. Crim. App. 1988). And if this Court determines that Appellant's objections to the seized evidence has merit, it should set aside the judgment based on the plea, and remand the case for a new trial.

The State argued that: (1) Appellant was not initially illegally seized when Rodney Boyett was required by a police officer to stop the vehicle, in which she was a passenger, along a highway and then detained, and (2) the information gathered as a result of the seizure and a subsequent warrantless, but ostensibly

23

legal, search of Appellant's vehicle constituted probable cause for a valid warrantless arrest. The State further argued (and the trial court found) that the recorded statements obtained from Appellant and Rodney Boyett after they were arrested were not coerced, but rather free of compulsion, and were not tainted by police action beforehand. Appellant argues that none of these arguments (and the trial court's decisions) were supported by facts or legally correct. Appellant thus requests de novo review of those rulings by this Court. *See* Tex. Rule App. Proc. 25.2(a)(2)(A) (2015).

The first issue is whether the stop of Appellant's vehicle was based: (1) on observation of a traffic offense, or (2) reasonable suspicion that the occupants were engaged in other criminal activity. Both of those hypotheses were offered by the State as a legal basis for a temporary investigative seizure of the occupants.

Another issue is whether the police developed probable cause to believe they would find evidence of a crime within the vehicle before they searched it without a warrant. It must also be determined whether any statements made during the detention (traffic stop) were obtained legally.

Third, this Court must decide whether the recorded statements of Appellant were improperly compelled by improper threats, deception, or as a result of an illegal arrest.

24

Finally, another issue is presented. Appellant was scheduled to be tried jointly with Rodney Boyett before the same jury. Appellant assumed, however, that the State would not seek to use the statements the police obtained from Rodney Boyett as evidence against her. Thus, the admissibility of Rodney Boyett's statements as to Appellant was not raised in her motion to suppress.

However, this Court might hold those statements were voluntary. If along with that holding, the Court agrees that this case must be remanded for a new trial and the State demands both a joint trial and use of Rodney Boyett's statements to show the conspiracy, then the issue will arise. It would become appropriate for examination by this Court. *Cuadros-Fernandez v. State*, 316 S.W.3d 645, 658 (Tex. App. Dallas 2009, *no pet.*).

Thus, Appellant suggests that this Court should declare that the trial court would need to take appropriate actions to prevent any use of such statements as evidence against Appellant. This is because even assuming that the State will be able to show there was a conspiracy as alleged, the co-conspirator exception to the hearsay rule would clearly be inapplicable. Rodney Boyett's arrest and separation from Appellant before she made the statements necessarily precluded any further concerted action between them, so any alleged conspiracy ended upon the separation. This hearsay exception applies only to statements made during the existence of the conspiracy and in furtherance of it. *Carroll v. State*, 139 S.W.2d

821, 823 (Tex. Crim. App. 1940); *see also Byrd v. State*, 187 S.W.3d 436, 441 (Tex. Crim. App. 2005) (discussing *Krulewitch v. United States*, 336 U.S. 440 (1949) as the starting point for how to apply Tex. Rule Evid. 802(e)(2)(E)).

### ii. Standard of review

If the trial court makes express findings of fact, as the court did in this case (CR, 195), this Court reviews the evidence in the light most favorable to the trial court's ruling and determines whether the evidence supports the factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact, and is reviewed by this Court de novo. *State v. Mendoza*, 365 S.W.3d 666, 669-670 (Tex. Crim. App. 2012).

### iii. Law regarding investigative detentions

There are three types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, which are reasonable only if supported by probable cause. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). To determine when a consensual encounter becomes a detention, under *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), courts must take into account the totality of the circumstances of the

interaction to decide whether a reasonable person would have felt free to ignore the police officer's request or terminate the consensual encounter. *Wade, id.* at 667. If ignoring the request or terminating the encounter is an option, then no Fourth Amendment seizure has occurred. *Id.* But, if an officer through force or a show of authority succeeds in restraining a citizen in his liberty, the encounter is no longer consensual. *California v. Hodari D.*, 499 U.S. 621, 627-628 (1991). And, the question of whether the particular facts show that a consensual encounter has evolved into a detention is a legal issue that is reviewed de novo. *Wade, id.* at 668.

Nervousness alone does not constitute reasonable suspicion. *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012). Refusal to cooperate with an officer during a consensual encounter does not constitute reasonable suspicion. *Brown v. Texas*, 443 U.S. 47, 48-49 (1979). And, nervousness combined with a refusal to cooperate does not form reasonable suspicion. *Wade, id.* at 668-669.

In *Wade*, the defendant, an electrician, was spending his lunch hour sitting in his work truck in the near-empty parking lot of a public boat ramp. *Id.* at 665. It was mid-May in Texas, so he had his truck engine running and the air conditioner on. *Id.* Two game wardens, who were investigating fishing violations, approached the defendant's truck to "make sure the occupant was okay." *Id.* One warden thought that the truck was "out of place" and "suspicious" because he did not see a

boat or any fishing equipment, but had a large box trailer attached with "Wade Electric" printed on the sides. *Id.* The area was not a "high crime area." *Id.*

The defendant rolled his window down and told a warden he was eating lunch, but the warden thought that was a lie because he did not see any "evidence" of lunch such as food, wrappers, or a cooler. *Id.* The defendant said that he lived "nearby," but his license, turned over on request, showed that he lived 15 miles away. *Id.* The defendant explained that he was "looking at purchasing a house close to the boat ramp," which a warden also considered a lie. *Id.* The defendant was "overly nervous." *Id.* After asking the defendant if he had any weapons or anything the warden "should be aware of," the defendant asked "why are you doing this?" *Id.* The warden ordered the defendant to step out of the vehicle for the purposes of conducting a pat-down for the safety of the warden. *Id.* The defendant then admitted there was a pipe in the truck, and upon a search, a warden found the pipe and a small amount of methamphetamine. *Id.* The Court of Criminal Appeals held that the defendant's statement about the pipe in his truck was derived from the warden's illegal detention and was "fruit of the poisonous tree," and therefore that statement could not provide probable cause for searching the defendant's truck. *Id.*

Thus, in order to lawfully conduct an investigative detention, an officer must have reasonable suspicion that an individual is involved in criminal activity.

*Wade*, see above; *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Reasonable suspicion requires more than a hunch, and it exists only when an officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer to reasonably conclude that the person detained is, has been, or soon will be, engaging in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005), *citing Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The reasonable-suspicion determination is an objective one made by considering the totality of the circumstances. *Ford, id.* at 492-493. The reasonable suspicion test calls for consideration of specific, articulable facts and reasonable inferences therefrom based on the totality of the circumstances. *Delafuente v. State*, 414 S.W.3d 173, 177, 178 (Tex. Crim. App. 2013).

Further, "[A] law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest." *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (citing *Terry v. Ohio,* 392 U.S. 1, 22 (1968)). And, "there is no requirement that a traffic regulation must be violated in order for an officer to have sufficient reasonable suspicion to justify a stop of a vehicle." *State v. Alderete*, 314 S.W.3d 469, 473 (Tex. App. El Paso 2010, *no pet.*). Rather, an officer may be justified in stopping a vehicle based upon a reasonable suspicion of "some other criminal

offense." *Id. See also State v. Houghton*, 384 S.W.3d 441, 446-447 (Tex. App. Fort Worth 2012, *no pet.*).

### iv. There was no justification for the stop of Appellant under the Transportation Code, and this alone should cause this court to reverse and remand this case back to the trial court.

The State's initial position was that Foreman could stop the vehicle, in which Appellant was a passenger, for an observed violation of § 545.060 of the Texas Transportation Code. § 545.060 requires a vehicle to be driven within the confines of a single lane and prohibits movement into another lane, if that movement cannot be made safely. Tex. Transp. Code § 545.060 (2013). The trial court believed the detective expressed specific, articulable facts to justify the idea that Rodney Boyett committed the traffic offense when he allegedly "moved out of his lane [to the left] toward the center of [Loop 286]" in combination with the detective's testimony that he "was unable to make *an immediate* traffic stop because of heavy traffic."

Loop 286 is a four-lane divided highway, with two lanes provided for travel in each direction. According to Foreman, although Appellant and Rodney Boyett were traveling in the right-hand lane, he saw (from behind) the driver's side tires at one point cross "over the center line into the left lane before going back." (RR, 21). Appellant asserted Foreman's description of what he saw was insufficient to fully describe a violation of § 545.060. The safety of (or danger presented by) the

30

movement of Appellant's vehicle would depend on several factors apart from the painted line dividing the roadway into lanes, and most particularly the proximity and location and speed of other vehicles relative to Appellant's vehicle. There was, however, no testimony concerning those other factors. There was no testimony that the vehicle swerved (as perhaps opposed to drifted) across the line, that Rodney Boyett lost control of the vehicle, or threatened any other person or object then on the road.

The trial court filled in these blanks by inferring there were safety concerns merely because Foreman testified he decided not to immediately signal Appellant to pull over because of "heavy traffic." This vague statement did not justify the inference. The amount of time and distance involved between the purported offense and the stop was also not addressed. (RR, 22-23).

The trial court apparently believed that the applicable law was found in *Williams v. State,* 06-07-00132-CR, 2008 Tex. App. LEXIS 2920 (Tex. App. Texarkana, April 24, 2008, *no pet.*) (not designated for publication). However, the driving observed in Appellant's case was unlike that involved in *Williams*. In *Williams*, the driving was described as "traveling into the lane designated for oncoming traffic on the left then back toward the right ditch along the right side of the road." *Id.* at *4.

Movements out of a lane of traffic, especially on a road having multiple contiguous lanes for the *same* direction of travel, are not categorically prohibited under § 545.060. Such movements may be necessary to avoid roadway obstacles. In fact, defensive driving often requires such movements. Maintaining the vehicle's position entirely in a single chosen lane is required only as "nearly as practical." As recently stated by the State Prosecuting Attorney, "[T]he practicality requirement of § 545.060(a) prohibits indiscriminate straddling, aimless weaving, or capricious lane changing, but it allows departure from the lane for sensible reasons." State's Brief at 7, filed May 22, 2015 in Cause No. PD-0072-15, *Leming v. State*, petition granted from *Leming v. State*, 454 S.W.3d 78 (Tex. App. Texarkana 2014, pet. granted). Without further details about the lack of safety or practicality in Rodney Boyett's driving, even given the benefit of logical inferences, Foreman did not describe a violation of § 545.060. *Cf. Johnson v. State*, 365 S.W.3d 484, 489 (Tex. App. Tyler 2012, *no pet.*) (lack of safety could be shown by single, short, slight crossing of center line because officer pointed out that it "was dark at the time and the road was narrow, highly traveled, and had no shoulder").

Appellant's case is similar to *Leming v. State*, 454 S.W.3d 78 (Tex. App. Texarkana 2014, pet. granted), where this Court opined, "[W]hen one takes the speed of the traffic and the totality of the circumstances into account, we cannot

say that any such encroachment from lane to lane by Leming was done in an unsafe manner. Therefore, we find the trial court's ruling that the stop was prompted by the officer's observation of a traffic violation to be unsupported by the record." *Id.* at 83. This Court made such finding despite the fact that the officer "indicated that rather than following Leming as long as he did, he 'would have liked to stop him way earlier...but the traffic was too heavy'." *Id.* at 81. *See also Aviles v. State*, 23 S.W.3d 74, 77 (Tex. App. Houston [14th Dist.] 2000, *no pet.*) (The state must produce evidence that the movement was unsafe or dangerous).

### v. The information about pseudoephedrine purchases did not amount to reasonable suspicion to initiate a Terry investigative detention

The trial court also erred in finding that Foreman possessed reasonable suspicion to stop the vehicle to investigate Appellant and Rodney Boyett for criminal activity under *Terry*. Foreman never expressed the idea that he could or should stop the vehicle apart from the traffic offense despite his presumed understanding of the legal principles involved. Further, all he knew was that persons who had previously (within a time frame not described) made suspicious (but not illegal) purchases of pseudoephedrine had again made a small purchase of pseudoephedrine at one or two CVS pharmacies in Paris, and had also stopped at a

33

Home Depot and a Walmart store, where they might have made purchases of items that might be used in the clandestine manufacture of methamphetamine.

Far too much conjecture was involved for Foreman to conclude that he had reasonable suspicion or probable cause (as opposed to a hunch) that the occupants of the vehicle were in possession of contraband or actively preparing to manufacture methamphetamine. There is a difference between "questionable" or "unexplained" and a "distinct possibility of criminality." In this regard, in *Davenport v. State*, 299 S.W.3d 859, 861 (Tex. App. Eastland 2009, *no pet.*), the facts involved a purchase of a large quantity of pseudoephedrine, and the occupants of the vehicle were reacting to the sight of a police car. To Appellant's knowledge, no other court has relied on *Davenport*. And, Appellant purchased 40 pills, which does not constitute a "large quantity." (RR, 33, 65).

In another case, the court of appeals seemed to conclude manufacture of methamphetamine could be inferred, to the level of probable cause, as the reason for purchases of "suspiciously large quantities of pseudoephedrine and other products [generally] associated with the illicit production of methamphetamine." *State v. James*, Nos. 03-07-00210-CR, 03-07-00211-CR, 03-07-00212-CR, 03-07-00213-CR, 2007 Tex. App. LEXIS 8695, 2007 WL 3225374, at *4 (Tex. App. Austin, Oct. 31, 2007, *no pet.*) (mem. op.) (not designated for publication). In *James*, the defendant appeared to have purchased 10 to 20 boxes (200 to 400 pills)

in a short amount of time (unlike Appellant, who purchased 40 pills). Still, *James* has no binding effect on this Court.

### vi. There was no justification for the search of Appellant's vehicle and her arrest

Appellant's vehicle was not legally stopped. Other than purportedly witnessing a violation of the transportation code (which, as Appellant shows above, did not occur), the only additional information Foreman obtained before conducting the warrantless search of the vehicle was a statement by Rodney Boyett that he had used methamphetamine previously. This is not reasonable suspicion that ripened to probable cause, which is required for the search.

The trial court apparently believed that Rodney was deceptive in failing to admit a purchase by him of pseudoephedrine at the Lamar Street CVS or in becoming silent once that accusation was made. (CR, 196-197; ¶¶ 7 and 13). The trial court misinterpreted the testimony. Foreman said, "Well, I had advised [Rodney Boyett] that I knew he and [Appellant] had just purchased pseudoephedrine at different locations in Paris in a short timeframe." (RR, 28). Thus, there was no testimony about whether Foreman had information about (or accused Appellant of) a purchase of pseudoephedrine at the second CVS store.

Rodney Boyett was under no obligation to even respond to the accusation. Rodney Boyett's silence on the matter and his admission that he had used meth in the past neither proved nor suggested anything. In certain circumstances, deceptive

35

answers to questions normally associated with the traffic may rise to *reasonable suspicion* if coupled with other facts. However, Rodney Boyett's answer pertained to something unrelated to do with the traffic stop and the validity of the search depended on probable cause, and not reasonable suspicion. And with the exception of Rodney Boyett's silence, Foreman learned or observed nothing new during the stop that would reasonably lead to any heightened suspicion that would justify a warrantless search. *See, e.g., Freeman v. State*, 62 S.W.3d 883, 888 (Tex. App. Texarkana 2001, *pet. ref.*) (prolonged detention during a traffic stop was deemed reasonable because the passenger and driver gave inconsistent answers to questions regarding the use of the rental car, and the officer smelled marijuana in the vehicle); *White v. State*, 574 S.W.2d 546, 547 (Tex. Crim. App. 1978) (No reasonable suspicion merely because the driver was observed driving aimlessly in a mall parking despite the fact that had been a rash of purse snatchings in the parking lot); *Lopez v. State*, 223 S.W.3d 408, 415 (Tex. App. Amarillo 2006, *no pet.*) (Reasonable suspicion existed for the further detention of the defendant who was stopped in a high crime area and the officer observed a plastic baggie in the crease of the gas cap compartment).

Rodney's admission that he had used methamphetamine at some time in the past was too tenuous to suggest that any recent purchase of pseudoephedrine was related to a present intent to manufacture methamphetamine. Yet, that is the only

fact that would make the presence of pseudoephedrine punishable *as a crime*. Without any evidence of the *suspected* purpose of the pseudoephedrine purchase, the officer engaged in a search for "mere evidence." "Mere evidence is evidence connected with a crime, but does not consist of fruits, instrumentalities, or contraband." *Reeves v. State*, 969 S.W.2d 471, 485 (Tex. App. Waco 1998, *no pet.*).

Such a search is permissible only upon establishment of a particular set of circumstances: "(1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence *of that offense* or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place or thing to be searched. " *Id.* at 483 (emphasis added). Here, there was no evidence that any specific offense was committed. Nor was there any evidence showing that the specifically described property or items that are to be searched for or seized constitute evidence *of that offense* or evidence that a particular person committed that offense. "Thus, it appears that the Legislature has adopted more restrictive rules for searches for 'mere evidence' than those enunciated by the United States Supreme Court. Under our system of federalism, a state is free as a matter of its

own law to impose greater restrictions on police activity than those the Supreme Court holds to be necessary upon federal constitutional standards." *Id.* at 484.

Accordingly, to legally justify the search, Foreman needed to articulate why he thought anything in vehicle driven by Appellant *on that day* was intended by them to be used to make methamphetamine. All Foreman knew was that the persons in the vehicle made two purchases of pseudoephedrine with a possible purpose of making methamphetamine. Foreman had no evidence or reasonable belief to conclude that Appellant and Rodney Boyett were actually preparing to manufacture methamphetamine. One cannot deduce an association with methamphetamine merely from acquisition or possession of pseudoephedrine. Thus, Foreman's knowledge and belief is nothing more than a hunch. There was also no evidence concerning the amount of pseudoephedrine required to make any given amount of methamphetamine or that a sufficient quantity of pseudoephedrine was reasonably expected to be located in the vehicle.

This was especially true because Foreman conducted the search, seized the items, and then placed Appellant and Rodney Boyett under arrest for "possession of certain chemicals." (RR, 32-34, 65). *See* Tex. Health & Safety Code § 481.124(b)(3) (2013). This is clearly an illegal arrest because less than three containers packaged for retail sale and less than 300 tablets of pseudoephedrine were found in the vehicle. This statute allows probable cause for an arrest if the

38

defendant possesses "in one container, vehicle, or building, phenylacetic acid, or more than nine grams, three containers packaged for retail sale, or 300 tablets or capsules of a product containing ephedrine or pseudoephedrine." *Id.* This evidence was not present in this case, as only two retail packages containing 20 tablets each were found in Appellant's vehicle.

"[A] Fourth Amendment *Terry* detention is not a custodial arrest" for purposes of Miranda or article 38.22 of the Texas Code of Criminal Procedure." *State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008) (citing *Terry*, 392 U.S. at 30-31). Here, the questioning by Foreman had nothing to do with the traffic offense. Foreman had no interest in the alleged traffic offense, it was merely used as basis to try to find out why Appellant and his wife had been making purchases of pseudoephedrine in Paris. Thus, not only was the stop unreasonable, the continued detention for an entirely different purpose was also unreasonable. "The Fourth Amendment to the United States Constitution, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, states that '[t]he right of the people to be secure in their persons...against unreasonable...seizures, shall not be violated.'" *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (quoting U.S. Const. Amend. IV). A detention becomes unreasonable when it is not reasonably related in scope to the circumstances which justified the detention in the first place. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App.

39

1997). Seizing someone for a legitimate purpose cannot reasonably encompass using the detention for an entirely different purpose.

This was the law before *Crittenden v. State*, 899 S.W.2d 668 (Tex. Crim. App. 1995), in which the Court of Criminal Appeals appeared to hold that "an objectively valid traffic stop is not unlawful under [Texas Constitution] Article 1, § 9 merely because the detaining officer had some ulterior motive for making it." The majority did not expressly adopt Judge Baird's conclusion that the new "objective standard" would preclude review *of the actions committed by the officer in conducting a stop* as well as the reasons behind the traffic stop. 899 S.W.2d at 678 (Baird, J., dissenting).

And as noted in footnote 6 of *Crittenden*, there is a reason why the Supreme Court of the United States had expressed concern over whether objectively valid police conduct in initiating a stop of a vehicle for a traffic offense would provide a blanket justification for its use for a further search or seizure. "Bait and switch" is as equally reprehensible in invasions of privacy as it is in generating sales of goods or services. Appellant argues that the lack of reasonable suspicion does not disappear or change or become irrelevant merely because Rodney Boyett committed a traffic offense (which he did not). Thus, the Supreme Court's decision in *Whren v. United States*, 517 U.S. 806, 813 (1996) did no more in the Fourth Amendment context that *Crittenden* did in the context of Texas Constitution Art. 1,

§ 9. This is clear in the more recent statement by the Supreme Court that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'— to address the traffic violation that warranted the stop." *Rodriguez v. United States*, 575 U.S. ___, 135 S.Ct. 1609, 1613-1616 (2015).

Recently, the Tenth Court of Appeals addressed a similar situation. *See Richardson v. State*, ___ S.W.3d, No. 10-14-00217-CR, 2015 Tex. App. LEXIS 7066 (Tex. App. Waco, July 9, 2015) (designated for publication). In *Richardson*, believing that the defendant may have attempted to pick up a prostitute or engage in a drug transaction (although neither the prostitute ever entered the defendant's vehicle, nor did the officer see any actual drug transaction), the officer stopped the defendant for "failing to stop at a designated point in the intersection." *Id.* at *5-6. Two minutes into the stop, the officers learned that the defendant had no outstanding warrants, and the defendant told the officers that he had no past drug charges. *Id.* at *6. The officers never issued the defendant a citation for the alleged traffic violation. *Id.* This is the point where the traffic stop investigation was fully resolved, and the defendant should have been allowed to leave. *Id.*, citing *Rodriguez*, 135 S.Ct. at 1612-1613 and *Kothe v. State*, 152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004). However, the defendant was detained for at least an additional 13 minutes until a drug dog arrived, which alerted to the defendant's keys and the driver's side door of the defendant's vehicle. *Id.* at *6-7.

41

In Appellant's case, Foreman admitted that he made what turned out to be an illegal traffic stop so that he can "make contact" with Appellant. (RR, 22). Thus, the evidence, including Appellant's statement that he had previously used methamphetamine, was obtained by the police illegally, and was gained as a result must be treated as the fruit of an illegal seizure of Appellant. "[A]fter making a stop for a traffic violation, an officer may rely on all of the facts ascertained during the course of his or her contact with the defendant to develop articulable facts that would justify a continued detention." *Sims v. State*, 98 S.W.3d 292, 295 (Tex. App. Houston [1st Dist.] 2003, *no pet.*); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App. Fort Worth 1998, *no pet.*). But, this assumes that the traffic stop was legal, and also where something was observed in plain view or smelled. Interrogation not related to the traffic stop (as in Appellant's case) is a different matter.

Courts have held that an officer may properly ask questions during a routine traffic stop that are "unrelated to the justification for the traffic stop" provided there is some other fact supporting the unrelated question. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (Additional questioning that lead to a patdown search of a vehicle occupant was supported by that occupant's discussion with officer of gang affiliation and recent criminal activity). However, this does not mean that an officer may begin questioning an occupant of a vehicle with questions having no connection to the traffic offense, not prompted by anything observed before the

detention reasonably should have ended. Thus, if unreasonable seizures of persons are to be prevented, such stops should not be approved under either *Terry* or *Whren*. *See, e.g., State v. Rauch*, 586 P.2d 671, 678 (Idaho 1978) ("[T]he history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness."). Generally, the criminal law prefers "extrinsic evidence independently secured through skillful investigation" by the officers over reliance on a defendant's confession. *Mendez v. State*, 56 S.W.3d 880, 891 (Tex. App. Austin 2001, *no pet.*), *quoting Connor v. State*, 773 S.W.2d 13, 13-14 (Tex. Crim. App. 1989), *quoting Escobedo v. Illinois*, 378 U.S. 478 (1964). In Appellant's case, there was a traffic stop that was clearly pretextual, and the answers to questions propounded on Appellant and Rodney Boyett could not have formed the basis of probable cause to search the vehicle.

### vii.    Conclusion

The trial court erred when it denied Appellant's motion to suppress evidence because the evidence was illegally obtained as a result of an unreasonable seizure of Appellant without a warrant and without reasonable suspicion that he had been or would soon be engaging in criminal activity, including for any offense under Texas Transportation Code § 545.060. As a result, Appellant asks this Court to reverse the Judgment and sentence and remand this case back to the trial court for a new trial.

## 2. **Issue Two**: The trial court erred when it denied Appellant's motion to suppress her recorded statement because: (1) it was given in response to custodial interrogation by the police; (2) it was obtained as a result of her illegal arrest; and (3) it was not shown to be freely and voluntarily made without compulsion or persuasion as required by Texas Code of Criminal Procedure Article 38.21.

### i. The confession was tainted by the unlawful arrest

Probable cause to search must be legally obtained. *See Le v. State*, 463 S.W.3d 872 (Tex. Crim. App. 2015), citing *Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980). Violations of the Fourth Amendment do not lead to a valid arrest. And, a confession obtained incident to an unlawful arrest is subject to suppression. *State v. Crisp*, 74 S.W.3d 474, 481 (Tex. App. Waco 2002, *no pet.*) (the investigative detention contemplated by *Terry* involves brief questioning of a truly investigatory nature); *Vicioso v. State*, 54 S.W.3d 104, 110, 111 (Tex. App. Waco 2001, *no pet.*) ("A 'voluntary' confession given after an illegal arrest is tainted, and, as 'a direct result of' the arrest, must be excluded under article 38.23(a) of the Code of Criminal Procedure.").

Appellant's case is not a situation in which officers made some technical error that invalidated the arrest; rather, there was a lack of probable cause to support the warrantless arrest. Thus, the arrest was clearly illegal, and the illegality weighs strongly in favor of suppression of the confession that would not have been obtained aside from the coercive effect of Appellant's arrest. *See Farmah v. State*, 883 S.W.2d 674, 679 (Tex. Crim. App. 1994).

44

### ii. The confession was coerced

After she was arrested and in police custody at the station, rather than remain silent, Appellant chose to answer questions without the benefit of counsel because she: (1) was expressly denied access to counsel; and (2) was threatened with loss of her children unless she told the officer what the officer wanted to hear, at which time this would all just go away. These claims were not denied by Foreman or Moore. The State bears the burden of establishing a knowing, intelligent, and voluntary waiver of one's rights under *Miranda* and Article 38.22. *Leza v. State*, 351 S.W.3d 344, 349, 351 (Tex. Crim. App. 2011); *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010); Tex. Code Crim. Proc. Art. 38.22 (2013). When considering whether a statement was voluntarily made, a court looks to the totality of the circumstances surrounding the acquisition of the statement. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007).

A confession is involuntary if circumstances show that the defendant's will was overborne by police coercion. *Delao, id.* at 240. If the record shows that there was official, coercive conduct of such a nature that a statement from the defendant was "unlikely to have been the product of an essentially free and unconstrained choice by its maker," the defendant's will was overborne. See *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the

weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App.1990). The trial court may accept or reject all or any part of a witness's testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). In reviewing the trial court's decision, an appellate court does not engage in its own factual review; it determines only whether the record supports the trial court's factual findings. *Romero*, 800 S.W.2d at 543. If the trial court's factual findings are supported by the record, absent an abuse of discretion, an appellate court does not disturb the findings. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991); *Dancy v. State*, 728 S.W.2d 772, 772 (Tex. Crim. App. 1987). On appellate review, the Court normally will address only the question of whether the trial court properly applied the law to the facts. *Romero*, 800 S.W.2d at 543; *Vargas v. State*, 852 S.W.2d 43, 44 (Tex. App. El Paso 1993, *no pet.*).

The Code of Criminal Procedure expressly allows the statement of an accused to be used against him *if* it appears that the statement was freely and voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Arts. 38.21 and 38.22. Apart from the statutory requirements, the admissibility of a confession is contingent on the accused being accorded "due course of the law of the land." Tex. Const. Art. 1, § 19; *Collins v. State*, 352 S.W.2d 841, 843 (Tex. Crim. App. 1961). A confession must not be taken under circumstances condemned by the decisions of the Supreme Court of the United States as violative

46

of the Due Process Clause of the Fourteenth Amendment. *Collins*, 352 S.W.2d at 843. If the reviewing court is convinced that a confession is inadmissible as a matter of law, it must "not hesitate to so hold." *Collins*, 352 S.W.2d at 843; *see also Golemon v. State*, 247 S.W.2d 119, 121 (Tex. Crim. App. 1952) and *Prince v. State*, 231 S.W.2d 419, 421 (Tex. Crim. App. 1950).

The Supreme Court of the United States has long held that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the due process clause of the Fourteenth Amendment. *Miller v. Fenton*, 474 U.S. 104, 109 (1985), citing *Brown v. Mississippi*, 297 U.S. 278 (1936). *Brown* held that the use of involuntary confessions in state proceedings violated Brown's due process rights under the Fourteenth Amendment. In *Brown*, the coerciveness of the police tactics was not in doubt: the confession was exacted by torture or physical violence. 297 U.S. at 281-282.

Subsequent cases have made clear that a finding of coercion need not depend upon actual violence by a governmental agent; a credible threat is sufficient. *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). "Coercion can be mental as well as physical and . . . the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Blackburn v. Alabama*, 361 U.S. 199, 206

47

(1966); *Reck v. Pate*, 367 U.S. 433, 440-441 (1961); *Rogers v. Richmond*, 365 U.S. 534, 540 (1961); *Payne v. Arkansas*, 356 U.S. 560, 561 (1958). In sum, suspects must be protected from police overreaching. *Oursbourn v. State*, 259 S.W.3d 159, 170 (Tex. Crim. App. 2008). A defendant is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession without regard to the truth or falsity of the confession, *Rogers*, 365 U.S. at 543-544, even though there is ample evidence aside from the confession to support the conviction. *Jackson v. Denno*, 378 U.S. 368, 376 (1964).

Along these lines, an inculpatory statement is inadmissible as having been induced by an improper promise only if: (1) the statement was obtained as a result of the positive promise of a benefit to the defendant, (2) the promise was made or sanctioned by one in authority, and (3) the promise was of such a character as would be likely to influence a defendant to speak untruthfully. *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004); *Hardesty v. State*, 667 S.W.2d 130, 134 (Tex. Crim. App. 1984). Reviewing court looks to whether the circumstances of the promise would have made a defendant inclined to admit to a crime he did not commit. *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991). The analysis is objective: it is not based on the actual truth or falsity of the information provided in response, but on the nature on its face of the inducement or encouragement involved. *Martinez*, 127 S.W.3d at 794-795.

Thus, when there is uncontradicted evidence that a confession or inculpatory evidence is obtained by coercion, threats, or fear, such confessions or inculpatory evidence are inadmissible as a matter of law. *Singegal v. State*, 582 S.W.2d 135, 137 (Tex. Crim. App. 1979); *Sherman v. State*, 532 S.W.2d 634, 636 (Tex. Crim. App. 1976); *Farr v. State*, 519 S.W.2d 876, 880 (Tex. Crim. App. 1975). Because the State has the burden to prove the voluntariness of a confession, the State must satisfactorily negate the defendant's allegations of coercion in order to satisfy its burden of proof. *Gentry v. State*, 770 S.W.2d 780, 789 (Tex. Crim. App. 1988); *Farr*, 519 S.W.2d at 880; *Garcia v. State*, 829 S.W.2d 830, 833 (Tex. App. Dallas 1992, *no pet.*).

In this case, the trial court's conclusion that it did not find Appellant's testimony that she told Moore prior to her interview that she wanted an attorney to be "not credible" is not supported by any facts or circumstances. In fact, Appellant's claims matched the other questionable aspects of the treatment by Appellant and Rodney Boyett by the police. Contrary to the trial court's unsupported conclusion, Appellant's claim does not appear exaggerated.

The trial court also found Appellant's claims about her conversation with Moore and the threats made by the officers shortly before the recorded interview on September 24, 2013, to be incredible. Yet, the record does not support his finding. Appellant clearly described a threat (not being able to call or go home, to

49

take care of her kids, unless she says what the officers want) that would make her decision to give up her right to remain silent "unlikely to have been the product of an essentially free and unconstrained choice," as spoken of in *Alvarado*, 912 S.W.2d at 211.

### iii.    Conclusion

The trial court erred when it denied Appellant's motion to suppress his recorded statement because: (1) it was given in response to custodial interrogation by the police; (2) it was obtained as a result of his illegal arrest; and (3) it was not shown to be freely and voluntarily made without compulsion or persuasion as required by Texas Code of Criminal Procedure Article 38.21. Appellant asks this Court to reverse the Judgment and sentence and remand this case back to the trial court for a new trial.

### 3. Issue Three: The judicial confession offered in support of Appellant's plea of guilty was insufficient to show guilt of criminal conspiracy, which is required by Texas Code of Criminal Procedure Article 1.15.

#### i. Argument

A reviewing court must "ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged. If the evidence establishes precisely what the State has alleged, but the acts that the State has alleged do not constitute [the charged] criminal offense under the totality of the circumstances, then that evidence, as a matter of law, cannot support a

50

conviction." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Further, "[N]o trial court is authorized to render a conviction in a felony case, consistent with Article 1.15, based upon a plea of guilty 'without sufficient evidence to support the same.'" *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009).

"[S]o long as...a judicial confession covers all of the elements of the charged offense, it will suffice to support the guilty plea. However, a stipulation of evidence or judicial confession that fails to establish every element of the offense charged will not authorize the trial court to convict." *Id.* at 13-14; *Trevino v. State*, 519 S.W.2d 864, 866 (Tex. Crim. App. 1975). A plea of guilty or nolo contendere constitutes an admission of guilt but does not authorize a conviction. *Cooper v. State*, 537 S.W.2d 940, 943 (Tex. Crim. App. 1976). The state must introduce evidence into the record showing the guilt of the defendant, and the evidence must be accepted by the court as the basis for its judgment. Tex. Code Crim. Proc. Art. 1.15 (2015); *see Tullos v. State*, 698 S.W.2d 488, 490 (Tex. App. Corpus Christi 1985, *pet. ref.*).

Thus, a conviction is voidable when based on a guilty plea that is not properly supported by evidence. *See also Valdez v. State*, 555 S.W.2d 463, 464 (Tex. Crim. App. 1977) (Compliance with Article 1.15 is mandatory for stipulated evidence to be considered by court) and *Duran v. State*, 552 S.W.2d 840, 842-843

(Tex. Crim. App. 1977) (A conviction must be reversed if the stipulated evidence does not comply with Article 1.15 and the other evidence presented is insufficient to support a conviction).

In any guilty plea, Article 1.15 must be complied with, and the "sufficient evidence" requirement of Article 1.15 is an absolute requirement. *See Landon v. State*, 222 S.W.3d 75, 79 (Tex. App. Tyler 2006, *no pet.*) and *Baggett v. State*, 342 S.W.3d 172, 175 (Tex. App. Texarkana 2011). In *Baggett*, this Court found that the requirements of Article 1.15 "...[F]alls within the absolute or systemic requirement category by its requirement that 'in no event' shall a person be convicted on his or her plea without sufficient evidence to support it." *Id.* And, this Court also concluded that "[A] claim of error for noncompliance with it is not forfeited or waived by the failure to object." *Id.*; *see Lopez v. State*, 708 S.W.2d 446, 448-449 (Tex. Crim. App. 1986) (A violation of Article 1.15 is fundamental error that may be considered for the first time on appeal or discretionary review). Finally, if no other evidence supports the plea and finding of guilt, "error is shown." *Id.*; *See also Menefee v. State*, No. 12-07-00001-CR, 2010 Tex. App. LEXIS 6665, 2010 WL 3247816 (Tex. App. Tyler Aug. 18, 2010, *no pet.*) (mem. op., not designated for publication), on remand from *Menefee v. State*, 287 S.W.3d 9 (Tex. Crim. App. 2009).

The State purported to meet the requirements of Article 1.15 in this case by use of a judicial confession that merely affirmed the truth of the allegations in the indictment. There was a sworn statement by Appellant that "[a]ll of the facts alleged in the indictment or information are true and correct" and "I committed and am guilty of each and every act as alleged therein..." (CR, 181). This presumably means that there was evidence that Appellant had agreed with Rodney Boyett at some point that they would engage in conduct at some point that would constitute the offense of manufacture of the controlled substance, methamphetamine, in an amount of one gram or more but less than four grams, and in *pursuance to* that agreement performed the overt act of possessing or transporting a chemical substance, to wit: liquid HEET and peroxide, with intent to unlawfully manufacture methamphetamine. (CR, 5).

Conspiracy to Manufacture or Deliver a Controlled Substance in Penalty Group 1 is a felony. Tex. Health & Safety Code § 481.112(a) & (c) (2013). The elements of the offense charged against Appellant as described in Texas Penal Code § 15.02(a) are: (1) an agreement between the defendant and one or more other persons, with the intent that a felony be committed, that they or one or more of them engage in conduct that would constitute the offense, and (2) he or one or more of them performs an overt act *in* pursuance *of* the agreement. Tex. Pen. Code § 15.02(a) (2013) (emphasis supplied).

53

The statement used to show Appellant's guilt differs from the statutory elements in that the overt act was stated to have been performed "in pursuance *to*" the agreement of the parties. (CR, 5). Perhaps if the statement had read "performed pursuant *to*" the agreement, it would have met the requirement of Article 1.15. However, this is not how it was worded. "Pursuance to" lacks coherence and meaning. Further, "to" does not have the same meaning or connotation as "of."

For instance, in *Tullos*, 698 S.W.2d at 490-491, the court held that a confession to stabbing was not proof of assault by threat that was alleged in indictment. In *Thornton v. State*, 601 S.W.2d 340, 342-343 (Tex. Crim. App. 1980), the court ruled that a confession to forgery by making a false writing did not support a conviction for forgery by passing a forged writing. And in *Dinnery v. State*, 592 S.W.2d 343, 348 (Tex. Crim. App. 1979), the court held that a judicial confession is insufficient if it incorporates by reference allegations of the indictment that are inconsistent with the other recitations in the judicial confession.

As a result, the trial court should not have accepted Appellant's plea of guilty, and in fact was prohibited by law from doing so. "Since the stipulation offered to meet the requirements of Art. 1.15, V.A.C.C.P., did not properly support the plea, the trial court should not have accepted the stipulation in evidence." *Thornton v. State*, 601 S.W.2d 340, 349 (Tex. Crim. App. 1979) (Dally, J.,

54

dissenting on motion for rehearing); *see also Byrd v. State*, 336 S.W.3d 242, 254 (Tex. Crim. App. 2011) (since a rose does not smell like a pickle, the two terms are not interchangeable) and *Cada v. State*, 334 S.W.3d 766, 772-773 (Tex. Crim. App. 2011) (precision in terminology is required in making proof). The defect in proving the overt act was for the purpose of furthering the objective of the agreement absolutely prevented the court from making a finding of guilt based on the plea. Appellant is accordingly entitled to have his plea held for naught and to have the case remanded for a new trial. *Bender v. State*, 758 S.W.2d 278 (Tex. Crim. App. 1988) (State's failure to comply with Article 1.15 is trial error).

### ii. Conclusion

The judicial confession offered in support of Appellant's plea of guilty was insufficient to show guilt of criminal conspiracy, which is required by Texas Code of Criminal Procedure Article 1.15. Appellant asks this court to reverse her plea of guilty and remand this case back to the trial court for a new trial.

## X. Conclusion and Prayer

For the above reasons, Appellant prays that upon appellate review, this Court reverse the Judgment and sentence and: (1) find and declare that Appellant's motion to suppress should have been granted; (2) order that Appellant is entitled to withdraw her plea of guilty, and (3) remand this case for a new trial.

Respectfully submitted,

The Law Office of Kristin R. Brown, PLLC
18208 Preston Road, Ste. D9375
Dallas, Texas 75252
Phone: 214-205-0701
Fax: 214-481-4868

by Kristin R. Brown
kbrown@idefenddfw.com
Texas Bar No. 24081458
Attorney for Appellant

## XI. Certificate of Service

I certify that on October 3, 2015, a true and correct copy of this document was served on Gary Young and Laurie Pollard of the Lamar County District Attorney's Office by email to gyoung@co.lamar.tx.us and lpollard@co.lamar.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015).

Kristin R. Brown

## XII. Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because it is computer-generated and does not exceed 15,000 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 10,306 words in the entire document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also

complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point font. *See* Tex. Rule App. Proc. 9.4 (2015).

_____
Kristin R. Brown